IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RIO GRANDE SILVERY MINNOW (Hybognathus amarus); SOUTHWESTERN WILLOW FLYCATCHER (Empidonax trailii extimus); DEFENDERS OF WILDLIFE; FOREST GUARDIANS; NATIONAL AUDUBON SOCIETY; NEW MEXICO AUDUBON COUNCIL; SIERRA CLUB; and SOUTHWEST ENVIRONMENTAL CENTER,

    Plaintiffs,

vs.    No. CIV 99-1320 JP/KBM-ACE

ELUID L. MARTINEZ, Director, Bureau Reclamation; MICHAEL R. GABALDON, Regional Director, Bureau of Reclamation; BUREAU OF RECLAMATION, an agency of the United States; GEN. JOSEPH BALLARD, Chief Engineer, Army Corps of Engineers; LT. COL. TOM FALLIN, Albuquerque District Engineer, U.S. ARMY CORPS OF ENGINEERS, an agency of the United States; the UNITED STATES, BRUCE BABBITT, Secretary, Department of Interior,

    Federal Defendants,

MIDDLE RIO GRANDE CONSERVANCY DISTRICT,

    Defendant-Intervenor

STATE OF NEW MEXICO,

    Defendant-Intervenor,

CITY OF ALBUQUERQUE,

    Defendant-Intervenor.

**MEMORANDUM OPINION AND ORDER**

On February 16, 2000 Defendant Intervenor filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 26).  On May 15, 2000 Federal Defendants filed a Motion to Dismiss; or in the Alternative, Motion for Partial Dismissal (Doc. No. 67).  Both motions will be denied.[1]

I.   Background

Congress, through the Endangered Species Act ("ESA"), has placed significant, proactive responsibility upon federal agencies.  Chief among those is the duty to prepare a Biological Assessment ("BA") when it appears that an agency action threatens an endangered species or its habitat.  See 16 US. C. § 1536 (c); 50 C.F.R. pt. 402.02.  Actions, for ESA purposes, are defined as "all activites or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies . . . [including] actions directly or indirectly causing modifications to the land, water, or air."  50 C.F.R. pt. 402.02.  Cf. 50 C.F.R. pt. 403.03 ("Section 7 and the requirements of this Part apply to all actions in which there is discretionary Federal involvement or control.")  The agencies in this case, Defendants Bureau of Reclamation ("Reclamation") and U.S. Army Corps of Engineers ("Corps") (collectively, "agency Defendants") have recently seen fit to issue two BAs concerning, inter alia, the two endangered species that are Plaintiffs in this case: the Rio

---

[1] By the Modified Stipulation and Order filed and entered on June 27, 2000, the Federal Defendants' reply was due "no later than July 14, 2000."  Presently before me is an unopposed motion, filed on July 17, 2000, to extend this deadline until August 11, 2000.  While I understand counsels' attention has been focused on other matters, the immediate need to resolve jurisdictional issues is too great to warrant further delays.  Federal Defendants' Unopposed Motion to Extend Time for Filing Reply in Support of Their Motion to Dismiss will therefore be denied.

Grande silvery minnow ("silvery minnow") and the southwestern willow flycatcher ("flycatcher").

A related agency duty is the obligation to consult with the Secretary of the Department of Interior ("Secretary"). Similar to the duty to prepare a BA, the duty to consult arises when an agency action is likely to jeopardize an endangered species or result in the destruction of its habitat. See 16 U.S.C. § 1536(a)(2). Consultation can be "early," "informal," or "formal." See 50 C.F.R. pt. 402.11, 402.13-14. A BA must precede the initiation of at least the "formal" variety of consultation. See 50 C.F.R. pt. 402.14(c). The parties essentially agree that a BA defines the scope of subsequent formal consultations.

Reclamation, the Corps, and the Secretary (through his designee, the Fish and Wildlife Service ("FWS")), have consulted concerning the impact of certain specific actions on at least the silvery minnow. Apparently the subject of these particular consultations has been the provision of supplemental water for the silvery minnow. (See Pls' Memo. in Supp. of Mot. for Part. Summ. J. at 19.) Plaintiffs further acknowledge that consultations are currently underway concerning the reconstruction of a levee between San Acacia and Elephant Butte. (See id.) Plaintiffs also indicate that the Reclamation intends to consult with FWS over the planned refurbishment of the low flow conveyance channel. (See id.)[2]

In addition there are ongoing consultations resulting from a BA released in October 1999. (See Pls' Opp. to Mot. to Dismiss at 3.) These are described by Plaintiffs as "limited consultation[s]" and they apparently concern the silvery minnow supplemental water program. (See Pls' Opp. to MRGCD's Mot. to Dismiss at 2 and Pls' Memo. in Supp. of Mot. for Part.

---

[2] No party in a brief relating to the motion to dismiss for lack of subject matter jurisdiction has clearly informed the Court of exactly what consultations are underway now.

Summ. J. at 19.) The October 1999 BA resulted, at least indirectly, from a BA released in mid-1998. That mid-1998 BA prompted Reclamation, and perhaps also the Corps (although it is unclear from the briefs), to request formal consultations with FWS concerning the effects of water operations and river maintenance activities in the Middle Rio Grande on the endangered species Plaintiffs. (See Pls' Opp. to MRGCD's Mot. to Dismiss at 2, referencing unspecified portion of Exhibit 37.)[3] For reasons that are unclear in the parties' briefs, the request for consultations, made because of the mid-1998 BA, was apparently never effectuated. In fact, the mid-1998 BA on which Reclamation based its request was later withdrawn. (See Pls' Memo. in Supp. of Mot. for Part. Summ. J. at 20.)[4]

On January 29, 1999, apparently after the withdrawal of the mid-1998 BA, Plaintiffs asked that the agency Defendants consult with FWS "concerning the full scope of their discretionary actions in the middle Rio Grande." (Pls' Opp. to MRGCD's Mot. to Dismiss at 2) (citing Ex. 38, which includes Plaintiffs' January 29, 1999 "Intent to Sue" letter). The agency Defendants refused the request. Instead, the agency Defendants issued the October 1999 BA. (See Memo. in Supp. of Fed. Defs' Mot. to Dismiss at 7.)

Meanwhile, in July 1999, FWS issued a silvery minnow Recovery Plan. (See MRGCD's reply, Ex. B).

---

[3] In Plaintiffs' words, FWS "sought consultation" with the agency Defendants but the agency Defendants refused. (See Pls' Opp. to MRGCD's Mot. to Dismiss at 2) (referencing an unspecified portion of Ex. 37.)

[4] A Biological Opinion ("BO") issued as a result of the mid-1998 BA was also withdrawn. Although a BO is issued during or after consultation, see 50 C.F.R. pt. 402.14(g)(4), the parties have not explained what, if any, consultations fostered this particular BO.

On April 12, 2000 Plaintiffs filed a First Amended Complaint.[5] A broad and fair characterization of the lengthy First Amended Complaint is that it alleges that Defendants have taken and are taking actions that harm the silvery minnow and the flycatcher, each listed as endangered. The First Amended Complaint has five claims for relief.

First, Plaintiffs claim that the agency Defendants are in violation of the consultation provision in 16 U.S.C. § 1536(a)(2) (part of the Endangered Species Act ("ESA")). Section 1536(a)(2) states that federal agencies "shall, in consultation with and with the assistance of the Secretary [of Interior], insure that any [agency action] is not likely to jeopardize the continued existence of any endangered species. . . ." Plaintiffs acknowledge that some consultations between the agency Defendants on the one hand, and the FWS on the other, have been and are occurring "on a very narrow subset" of Defendants' actions involving the Rio Grande. (First Am. Compl. ¶ 44.) Plaintiffs contend that the agency Defendants have discretion "over virtually all aspects" of their middle Rio Grande operations, including water operations, water deliveries, funding, operation, and maintenance. (Id. at ¶¶ 45-46)[6] Plaintiffs assert, therefore, that Defendants must consult with FWS on all of these discretionary actions. The first claim for relief adds that Defendants have failed to complete consultation over even the "narrow subset" of their

---

[5] Apart from naming and describing one new Defendant, the Secretary of Interior, the First Amended Complaint is identical to the original Complaint in all respects.

[6] Plaintiffs elsewhere state that the discretionary actions which are not being considered in any current consultations include: operation of the low flow conveyance channel, various dams and reservoirs, including Heron, El Vado, Abiquiu, Cochiti, and Jemez Canyon; operation of diversion dams, ditches, and drains by the MRGCD as agent for the agency Defendants; deliveries of San Juan/Chama Project water; and implementation of water delivery contracts. (See Pls' Mot. for Part. Summ. J. at 19.)

actions.[7]

Second, Plaintiffs claim the agency Defendants are violating their duties under 16 U.S.C. § 1536(a)(1).  Section 1536(a)(1) states that federal agencies "shall" further the purposes of the ESA "by carrying out programs for the conservation of endangered species and threatened species. . . ."  Plaintiffs contend that the agency Defendants are violating section 1536(a)(1) in three ways: (1) by operating reservoirs, dams, irrigation, and flood control facilities, and by releasing water to the MRGCD and others so as to allow excessive or wasteful irrigation withdrawals and cause the Rio Grande to dry above Elephant Butte and jeopardize the silvery minnow and flycatcher and their habitat; (2) by failing to provide federally owned or controlled water which could prevent river drying; and (3) by failing to operate irrigation and other facilities to prevent "entrainment" of the silvery minnow and physical obstruction of fish passage.

Third, Plaintiffs claim that the agency Defendants are violating 16 U.S.C. § 1536(d).  Section 1536(d) commands that a Federal agency "shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section."  Plaintiffs say the purpose of section 1536(d) is to maintain the status quo during consultation.  Plaintiffs allege that the agency Defendants are violating section 1536(d) by continuing water operations, during consultation, that amount to irreversible or irretrievable commitments of resources which foreclose reasonable and prudent alternatives that would not violate subsection (a)(2).

---

[7] 16 U.S.C. § 1536(b) contains time limitations for consultations.  The parties' briefing neither addresses these limitations nor indicates when the current consultations began or when they are scheduled to conclude.

Fourth, Plaintiffs claim that the agency Defendants are violating 16 U.S.C. § 1538 which prohibits the "take" of endangered species. Plaintiffs argue that the agency Defendants are causing "take" through their river operations, which include improper reservoir management and releases, approval of excessive or wasteful irrigation diversions, and other activities.

Fifth, Plaintiffs claim that the agency Defendants are violating 42 U.S.C. § 4332(C) (part of the National Environmental Policy Act ("NEPA")). Section 4332(C) requires federal agencies to prepare a detailed statement of environmental impacts and alternatives for all major federal actions significantly affecting the quality of the human environment. While Plaintiffs agree that Defendant Reclamation has undertaken to improve the irrigation system and water conservation/efficiency policies of the MRGCD, Plaintiffs complain that Reclamation has done this without conducting a detailed environmental impact study.

In addition, Plaintiffs assert that the conduct described in all five claims for relief further violates 5 U.S.C. § 706 (part of the Administrative Procedures Act ("APA")).

The MRGCD and the agency Defendants move to dismiss on the ground that this case is not ripe for decision. The agency Defendants argue that Plaintiffs failed to identify a particular agency action and instead brought an impermissible generalized grievance. Defendants make ripeness arguments, all of which are more or less related to the undisputed fact that certain consultations are still ongoing and that a final Biological Opinion ("BO") has yet to be issued. From these facts the MRGCD also attempts to fashion an argument that Plaintiffs lack standing to pursue this action.

II.     Justiciability

    A.     Generalized grievance

All Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1). A court must convert a 12(b)(1) motion into a Rule 56 motion for summary judgment when "resolution of the jurisdictional question is intertwined with the merits of the case." Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). On the other hand, when a party makes a "mere facial challenge to the complaint" a district court must accept the allegations in the complaint as true. Here, agency Defendants challenge the face of the First Amended Complaint by arguing that Plaintiffs' allegations are insufficient because they fail to identify a particular agency action. In support agency Defendants rely primarily on Lujan v. National Wildlife Federation, 497 U.S. 871 (1990). In National Wildlife Federation, the Supreme Court found the plaintiffs' complaint, challenging an entire federal program, to be too sweeping to withstand a motion for summary judgment. As the Supreme Court took great pains to point out, the issue before it concerned the district court's consideration of a motion summary judgment, not a motion made under Rule 12(b). Where, as here, the motion is one under Rule 12(b), general allegations are presumed to "embrace those specific facts that are necessary to support the claim." See National Wildlife Federation, 497 U.S. at 889.

Plaintiffs complaint is sufficiently specific. Claim I complains of the agency Defendants' failure to take an action (itself an action) concerning water deliveries, funding, maintenance, and other Middle Rio Grande management operations. (See First. Am. Compl. ¶¶ 44-47.) Claim II charges the agency Defendants with failing to use their authorities to conserve the endangered species Plaintiffs because the actions, sufficiently described throughout the complaint, lead to drying of the river, entrainment, and excessive diversions. (See id. ¶¶51-53.) The agency action identified in claim III could not be more clear: the agency Defendants' water operations resulting

8

in a possible irreversible or irretrievable commitment of resources while consultation is underway. (See id. ¶ 58.) Claim IV alleges the agency Defendants' river management activities, funding, and authorization with respect the middle Rio Grande, including reservoir storage management and releases, water deliveries, operation and maintenance, and approval of excessive or wasteful irrigation diversions are causing take of the endangered species Plaintiffs. Claim V, under NEPA, alleges the agency Defendants failed to prepare an environmental impact study on the effects of actions to increase the efficiency of the middle Rio Grande Irrigation system. (See id. ¶ 68.) An agency action may include a failure to act, see 5 U.S.C. § 551(13), and a reviewing court may compel agency action unlawfully withheld, see 5 U.S.C. § 706(1). In sum, the allegations in Plaintiffs' First Amended Complaint are sufficient under Rule 12(b).

      B.      Standing and ripeness

The constitutional minimum for standing to sue, which the MRGCD claims that Plaintiffs lack, has a three-part requirement.

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical'." . . . Second, there must be causal connection between the injury and the conduct complained of--the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 559, 560-61 (1992) (citations omitted). Plaintiffs bear the burden of establishing these elements "with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561.

The MRGCD argues that Plaintiffs' alleged injury is conjectural or hypothetical because until there is a final agency action, in the form of a BO, there is no proof of an actual or imminent

9

injury to Plaintiffs.  The MRGCD next argues that the claimed injury cannot be causally connected to the scope of the on-going consultations because they are not complete.  The MRGCD then surmises that the outcome of the current consultation process may protect the silvery minnow.[8] While the MRGCD often cites <u>Defenders of Wildlife</u> for the propositions of law stated in that case, the MRGCD does not make a challenge based on the facts of <u>Defenders of Wildlife</u>.[9]  <u>See</u> <u>Defenders of Wildlife</u>, 504 U.S. at 563.

The MRGCD conflates standing with ripeness.  Standing concerns who may bring an action; ripeness concerns when the action may be brought.  <u>See, e.g.</u>, <u>Wilderness v. Alcock</u>, 83 F.3d 386, 390 (11th Cir. 1996); <u>ACORN v. City of Tulsa</u>, 835 F.2d 735, 738 (10th Cir. 1987). The contention made repeatedly throughout the MRGCD's briefs is that since consultations are on-going, incomplete, underway, etc., Plaintiffs lack standing.  (<u>See, e.g.</u>, MRGCD's Reply in Supp. of Mot. to Dismiss at 9).  The basis for this asserted lack of standing is simply that there is no final agency action.  Yet as the MRGCD itself points out, whether there is a final agency action is one of four factors the Tenth Circuit has identified for consideration by courts assessing a case's ripeness, not standing to sue.  (<u>See id.</u> at 15 n. 7) (citing <u>Mobil Exploration & Producing</u>

---

[8] The MRGCD also argues that Plaintiffs' claims are not redressable because FWS is not a party.  Since the time this argument was made, the Secretary of Interior has been joined as a Defendant.  Hence, this argument is now moot.

[9] For instance, the MRGCD does not allege that the organizational Plaintiffs have failed to show at this early stage of the case that their members have sufficient interest in the preservation of species.  <u>See</u> <u>Defenders of Wildlife</u>, 504 U.S. at 561-63.  Suffice it to say, the MRGCD challenges Plaintiffs' standing with no more than unsupported allegations.  Normally, such motions should be summarily denied.  However, because standing goes to this court's subject matter jurisdiction, I have searched for evidence to support the MRGCD's allegations and have found none.

U.S., Inc. v. Department of Interior, 180 F.3d 1192 (10th Cir. 1999).[10]  Since the MRGCD expressly bases its challenge on the purported lack of a final agency action, see MRGCD's Memo. in Supp. of Mot. to Dismiss at 15 n. 7., a factor which the Tenth Circuit says bears on ripeness, this is the factor that will be analyzed.[11]

> It is well established that the finality of an administrative action depends on whether the action " 'impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process.' " [Ash Creek, 934 F.2d at 243] (citation omitted); see also Phillips II, 963 F.2d at 1387.  More recently, the Supreme Court has articulated this test for final agency action as having two conditions.  "First, the action must mark the 'consummation' of the agency's decisionmaking process . . . .  And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citations omitted); see also Franklin v. Massachusetts, 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) (stating test as "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties").

Mobil Exploration, 180 F.3d at 1197.  Again, the cornerstone of the MRGCD's argument,

---

[10] The MRGCD's point concerning the current consultations and final agency action might bear on the standing to sue requirement that injury be actual or imminent.  See Warth v. Seldin, 422 U.S. 490, 499 n. 10 (1975); ACLU v. Johnson, 194 F.3d 1149, 1155 (10th Cir. 1999) ("[I]f a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.") (citation omitted)).  The MRGCD does make an explicit argument, at least with respect to claim I, that Plaintiffs lack standing because they have not shown an actual imminent risk to the silvery minnow or willow flycatcher.  For reasons explained infra, this case is ripe.  Therefore, the imminence requirement for standing is also met, under Johnson.

[11] Large portions of the MRGCD's memorandum and reply are devoted to conveying deep concern about the possible effects the endangered species Plaintiffs' presence may have on the MRGCD.  The MRGCD also often asserts that precisely what the endangered species need is unknown.  The court is certainly aware of the potential ramifications the ESA may have on man.  See, e.g., TVA v. Hill, 437 U.S. 153 (1978).  However, these concerns about the requested and/or possible relief do not make the case unripe or divest Plaintiffs of standing or otherwise make this case non-justiciable.  Further, the court realizes that it is not well-positioned, at this stage, to determine exactly what relief, if any, may be appropriate.  This too, however, does not make the case non-justiciable.

purportedly directed at all five claims, is that this case is not ripe because consultations are currently underway.  Specifically, the MRGCD argues that because those consultations are unfinished they have not produced a final BO and, until that happens, the case is not ripe. Further, the MRGCD contends that the draft BO and revoked 1998 BA cannot form the basis for a ripe case because they are not the consummation of the agency's decision-making; they determine no rights or obligations and fix no legal relationships.  Plaintiffs respond that the October 1999 BA fixes the scope of the current consultations making ripe a challenge to agency inaction or a failure to consult on much of what the agency Defendants are doing in the middle Rio Grande.

      1.      Claim I

Claim I is ripe.  16 U.S.C. 1536(a)(2) states that

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such (hereinafter . . . "agency action") is not likely to jeopardize the continued existence of any endangered species or . . . result in the destruction or adverse modification of [critical] habitat. . . .

Plaintiffs contend that agency Defendants have refused to consult about "water operations, water deliveries, funding, operation and maintenance, and other actions" involving the middle Rio Grande.  (See First Am. Compl. ¶ 46.)  The MRGCD admits that no consultations regarding the

described actions are underway.[12]  (See MRGCD's Memo. in Supp. of Mot. to Dismiss at 11.)

The MRGCD does not argue (1) that what Plaintiffs describe are not agency actions within the meaning of section 1536(a) or (2) that they are the type of agency actions perhaps not covered by section 1536(a)(2).[13]  Indeed it appears that the actions described are exactly the sort about which the the agency Defendants should consult.  See, e.g., TVA v. Hill, 137 U.S. at 173 (holding that impacts of dam operation fell within section 1536(a)(2), noting that "[o]ne would be hard pressed to find a statutory provision whose terms were any plainer"); Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1209 (9th Cir. 2000) (finding Reclamation's dam operated to deliver water to users under contract is subject to ESA); NRDC v. Houston, 146 F.3d 1118, 1127 (9th Cir. 1998) (finding Bureau of Reclamation improperly failed to at least request formal consultation over water delivery contract); O'Neill v. United States, 50 F.3d 677, 681 (9th Cir. 1995) (noting that Bureau of Reclamation entered into consultation over water delivery when fish listed as endangered).  Cf. 50 C.F.R. pt. 403.03 (applying section 7 where there is federal

---

[12] On July 12, 2000 the Federal Defendants filed their response to Plaintiffs' pending motion for preliminary injunction.  Attached was the declaration of Robert Leutheuser, a Reclamation Deputy Area Manager.  In his declaration, Mr. Leutheuser indicates that since the briefing of the MRGCD's motion to dismiss for lack of subject matter jurisdiction, consultations on various areas of concern have begun.  In particular, it now appears that the agency Defendants and FWS are consulting over Reclamation's "discretionary actions at San Acacia, Isleta, and Angostura Diversion Dams, the Cochiti heading, and at El Vado Dam and Reservoir[.]"  (See Fed. Defs' Resp., Ex. A, Declaration of Robert Leutheuser at ¶ 39.)  This development puts claim I (but none of the others) in a new light and strongly suggests that claim I may be moot.  The motions to dismiss directed at claim I might therefore also be moot.  That is not clearly the case, however, and so the ripeness analysis will proceed.  Nonetheless, the parties should discuss whether claim I has now been satisfied and should be dismissed.

[13] The agency Defendants appear to believe that their actions about which Plaintiffs seek consultation are not within their discretion and/or authority.  This position, however, does not form the basis for their motion to dismiss or for partial dismissal for lack of subject matter jurisdiction.

discretion).  Instead, the MRGCD advances the simple proposition that because there are current consultations on some subjects, an action to force consultation on additional issues is unripe.  As previously noted, the parties' briefs relating to MRGCD's motion to dismiss for lack of subject matter jurisdiction do not clearly inform the court of the subject of ongoing consultations.  However, all parties appear to agree that the current process does not include discussion of some or all of the actions about which Plaintiffs seek to force consultation.  In the most basic terms, then, Plaintiffs want consultation on X, to which the MRGCD responds that Plaintiffs' demand is unripe because continuing consultation on Y is not final.

  Plaintiffs point out that they are not challenging the results of the ongoing consultation on Y.  Instead, they are challenging the decision not to consult also on X.  Thus the agency Defendants' and MRGCD's arguments concerning the lack of a BO based on the outcome of consultation on Y miss the mark.  The relevant ripeness inquiry is whether the decision not to consult on X in addition to Y is a final agency decision.  First, no party disputes that the decision to consult on Y, and by negative implication not on X, was made by the agency Defendants in the October 1999 BA.  In Bennett, upon which the agency Defendants primarily rely in their ripeness argument directed only at claim I, the Supreme Court held that a BO was a final agency action which the plaintiffs could therefore challenge.  See Bennett, 520 U.S. at 177-78.  Nothing in Bennett or any other cited decision explains why the 1999 BA is non-final for determining the subject matter of the present consultations.  Moreover, no one gives any indication that the 1999 BA was tentative, interlocutory or somehow non-final.  Thus, it is uncontested that the decision not to consult marks the consummation of the agency's decision-making process with respect to the requested consultations on Y.  See id. at 178.  Second, the decision not to consult fixes the

14

right and obligation of the agency Defendants and FWS not to consult and absolves the agency Defendants, at the time the decision was made at least, of the legal responsibility to consult. See id. Plaintiffs seek to "compel agency action unlawfully withheld," see 5 U.S.C. 706(1), which is unaffected by an agency decision to take action on another matter. Cf. Sierra Club v. Glickman, 156 F.3d 606, 613-14 (5th Cir. 1998) (imposing a duty to consult under section 1536(a)(1)).

The "[t]raditional [p]rinciples of [a]dministrative [l]aw" cited by the MRGCD for the proposition that the agency Defendants should be accorded deference in their construction of the statutes and regulations which they are charged to administer is well taken. (MRGCD's Memo. in Supp. of Mot. to Dismiss at 11.) However, these references do not support dismissal of the case for want of justiciability. See Bennett, 520 U.S. at 1166 ("It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking."). Rather, if anything, these principles bear on the standard of review that may be applied. See id.

Neither does the decision Sierra Club v. Yeutter, 926 F.2d 429 (5th Cir. 1991) favor dismissal. There the Fifth Circuit ruled that the district court's otherwise proper injunction of further violations of section 1536(a)(2) "eviscerated the consultation process by effectively dictating the results of that process." Sierra Club v. Yeutter, 926 F.2d at 440. The district court in that case erred, not by enjoining violation of section 1536(a)(2) by forcing consultation, but by "dictating the principal feature of all significant" aspects of the plan to be fashioned during

consultation, thereby impermissibly dictating the results of the consultation process.[14] See id. Here Plaintiffs only seek consultation, not control of the outcome of consultation.

The Tenth Circuit has cited other factors, aside from whether an action is final, that courts should consider in determining whether a case is ripe. See Mobil Exploration, 180 F.3d at 1197 (inquiring whether the issues are "purely legal," whether there will be a direct and immediate impact on plaintiff, and whether resolution will promote agency effectiveness in enforcement and administration). See also Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998) (identifying three factors: whether delay will cause hardship to plaintiffs, whether judicial intervention would interfere with further administrative action, and whether further facts need development). Certainly the impact on the endangered species Plaintiffs, if the allegations are true, potentially are great. It also appears that the facts underlying claim I need no further development.

The only remaining potentially relevant factor identified in Mobil Exploration appears to be the impact of judicial intervention on further administrative action or the agency's effectiveness. While the agency Defendants do not expressly argue this factor, and the MRGCD expressly claims not to argue it, the possible impact of new consultations on the actions Plaintiffs note is worth mention. All Defendants express concern about the court dictating the outcome of consultation, see MRGCD's Reply at 9, or intervening before the issuance of a BO, see Federal

---

[14] Interestingly, in Sierra Club v. Yuetter, what can be fairly described as a limited consultation (on a revised handbook of silviculturual practices with respect to a protected woodpecker) was already underway when Plaintiffs filed suit. See id. at 432. Plaintiffs alleged that the agency's "timber management practices" hurt a protected bird in violation of sections 1536(a)(2) and 1538(a)(1)(B), which are each at issue in this case. See id. While there is no indication that the district court or the Fifth Circuit considered a ripeness challenge, the procedural similarity is striking.

Def's Memo at 19.  However, a finding in the future that the agency Defendants have failed to consult with FWS on X might affect consultations on Y but will not interfere with them or somehow reduce the effectiveness of agency administration.

The Tenth Circuit has described ESA section 7 consultation as, "[a]t bottom . . . a mechanism for ensuring that a federal agency work closely with the FWS in formulating and implementing actions that could affect threatened or endangered species."  See Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 729 (10th Cir. 1997).   As repeatedly noted, the agency Defendants and FWS are working together, but in limited fashion, and not to the extent that would render Plaintiffs' claim I non-justiciable.

    2.    Claims II, IV, and V

It is difficult to discern any reason why the limited section 7 consultation presently underway operates to divest a court of jurisdiction to hear claims under (1) section 1536(a)(1) for failure to utilize authorities in carrying out the ESA, (2) section 1538(a)(1)(B) for taking endangered species or (3) 42 U.S.C. § 4332(c) for failing to conduct a detailed study of environmental impacts of certain actions.  Returning to the hypothetical used earlier, I observe that the MRGCD offers no authority for the proposition that consultations concerning Y make alleged violations stemming from X unripe because the consultations about Y are not final.  To the contrary, the actions or inactions forming the basis of claims II, IV, and V are complete and thus the claims are ripe.  As the MRGCD limited its argument to whether there was a final agency action and the agency Defendants limited theirs to claim I, I will not discuss the remaining factors identified in Mobil Oil/Ohio Forestry except to note that they are satisfied.

    3.    Claim III

Claim III bears special mention. In claim III, Plaintiffs aver that the agency Defendants, in violation of 16 U.S.C. § 1536(d), are irreversibly or irretrievably committing resources, effectively foreclosing the formulation or implementation of any reasonable and prudent alternative measures which might result from ongoing section 7 consultations. Again returning to the hypothetical illustration, I note that claim III alone among Plaintiffs' five claims deals with Y, not X. In fact, section 1536(d) is designed to protect the consultations concerning Y. Contrary to the MRGCD's position, this conclusion could not be more plain from the text of the statute, and caselaw too. See National Resources Defense Council v. Houston, 146 F.3d 1118, 1128 (9th Cir. 1998); National Wildlife Federation v. National Park Service, 669 F. Supp. 384, 390 (D. Wyo. 1987). No further analysis is warranted to emphasize claim III is ripe.

    4.    All claims

An important expected occurrence, only lurking in the shadows during completion of much of the briefing considered here, has now thrust its way to the fore and bears significantly, by any common sense measure, on the ripeness of this case. We are now rapidly approaching the date when the agency Defendants have said that they can no longer guarantee that the Rio Grande will remain wet through a key stretch of prime silvery minnow habitat. All Defendants (but mainly the MRGCD) have thus far been fond of pointing out that a continuous flow is not necessarily what the silvery minnow needs. Be that as it may, I will take judicial notice of the fact that fish need some water to live. With the imminent and substantial threat of an endangered species of fish losing water in a significant part of its range, the ripeness of this case could really not be more clear. The arguments that the ongoing consultation process may save the silvery minnow have now lost any luster they once had. Similarly, the implication that a yet-to-be-issued

BO from the ongoing consultation to guide compliance with NEPA will provide a solution also now rings hollow.  Instead, it appears that a failure to use authorities with respect to certain agency actions and certain commitments of resources during the ongoing consultations may very soon be harming and taking an endangered species.  As one court commented, "TVA v. Hill simply does not support a requirement that individual dead snail darters float atop the impounded reservoir" before the ESA is triggered.  See Pallila v. Hawaii Dept. of Land and Natural Resources, 649 F. Supp. 1070, 1076 n. 22 (D. Hawaii 1986).  Similarly in this case it is not necessary to have silvery minnows die on a dry riverbed while limited consultations purportedly designed to save the fish drag on.

  C. Olenhouse

  The MRGCD argues in its jurisdictional motion that this is a case of the type described in Olenhouse v. Commodity Credit Corp., 42 F.3d 1560 (10th Cir. 1994).  That argument does not bear on this court's jurisdiction.  Moreover, agency Defendants and the Secretary make the same, or similar, Olenhouse-based arguments with respect to the Federal Defendants' Motion to Strike Plaintiffs' Motion for Partial Summary Judgment.  The MRGCD's position on Olenhouse will thus be considered with respect to Federal Defendants' motion to strike Plaintiff's partial summary judgment motion, which will be decided in due course.

  IT IS THEREFORE ORDERED THAT

  (1) the MRGCD's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 26) is denied;

  (2)  Federal Defendants' Unopposed Motion to Extend Time for Filing Reply in Support of Their Motion to Dismiss is denied; and

(3) Federal Defendants' Motion to Dismiss; or in the Alternative, Motion for Partial Dismissal (Doc. No. 67) is denied.

_____
**UNITED STATES DISTRICT JUDGE**