IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RIO GRANDE SILVERY MINNOW (Hybognathus amarus); SOUTHWESTERN WILLOW FLYCATCHER (Empidonax trailii extimus); DEFENDERS OF WILDLIFE; FOREST GUARDIANS; NATIONAL AUDUBON SOCIETY; NEW MEXICO AUDUBON COUNCIL; SIERRA CLUB; and SOUTHWEST ENVIRONMENTAL CENTER,

    Plaintiffs,

vs.                                                                                  No. CIV 99-1320 JP/KBM-ACE

ELUID L. MARTINEZ, Director, Bureau Reclamation; MICHAEL R. GABALDON, Regional Director, Bureau of Reclamation; BUREAU OF RECLAMATION, an agency of the United States; GEN. JOSEPH BALLARD, Chief Engineer, Army Corps of Engineers; LT. COL. TOM FALLIN, Albuquerque District Engineer, U.S. ARMY CORPS OF ENGINEERS, an agency of the United States; the UNITED STATES, BRUCE BABBITT, Secretary, Department of Interior,

    Federal Defendants,

MIDDLE RIO GRANDE CONSERVANCY DISTRICT,

    Defendant-Intervenor,

STATE OF NEW MEXICO,

    Defendant-Intervenor,

CITY OF ALBUQUERQUE,

    Defendant-Intervenor.

## MEMORANDUM OPINION AND ORDER

On March 20, 2000 Defendant Intervenor Middle Rio Grande Conservancy District ("MRGCD") filed a motion to dismiss for failure to join indispensable parties (Doc. No. 31). That motion will be denied.

Plaintiffs make four claims against the Defendants Bureau of Reclamation and the U.S. Army Corps of Engineers ("agency Defendants") for violations of the Endangered Species Act ("ESA") and one claim for violation of the National Environmental Policy Act ("NEPA"). All claims stem from the presence of two endangered species, Plaintiffs Rio Grande Silvery Minnow ("silvery minnow") and Southwestern Willow Flycatcher ("flycatcher"), in a stretch of the Rio Grande from Cochiti Dam downstream to Elephant Butte Reservoir. The MRGCD diverts water from this section of the river at several locations, and through a network of ditches, provides this water for irrigation to its constituency. The MRGCD represents those who farm the middle Rio Grande, including the Pueblos of Cochiti, San Felipe, Santo Domingo, Santa Ana, Sandia, and Isleta.[1]

The MRGCD moves to dismiss this case on the ground that these six Pueblos are

---

[1] Each of these Pueblos is upstream of the San Acacia reach, which is the section of the Rio Grande between the diversion dam at San Acacia and Elephant Butte Reservoir. The San Acacia reach is apparently the section of silvery minnow habitat most prone to drying. The San Acacia reach also holds the greatest concentration of silvery minnows.

indispensable parties.[2]   Both the Plaintiffs and the agency Defendants and Defendant Secretary of Interior (collectively, "Federal Defendants") oppose the MRGCD's motion.  The Defendants-Intervenors who were not parties to this case when the MRGCD's motion was briefed have taken no position.  The Pueblos have not asked to intervene in this action and have not expressed, in this case, a position on the motion.  Because they have sovereign immunity, the Pueblos cannot be sued without their consent or congressional waiver.  See, e.g., Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991).

Whether an absent party is indispensable requires a two-part analysis applying Federal Rule of Civil Procedure 19.  See Davis v. United States, 192 F.3d 951, 957-60 (10th Cir. 1999); Rishell v. Jane Phillips Episcopal Memorial Medical Center, 94 F.3d 1407, 1411 (10th Cir. 1996).  "The court must first determine under Rule 19(a) whether the party is necessary to the suit and must therefore be joined if joinder is feasible.  If the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable.  If so, the suit must be dismissed."  Rishell, 94 F.3d at 1411.  The burden of persuasion lies on the movant.  See id. (quoting Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990)).  The movant must produce evidence "showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."  Citizen Band Potawatomi Indian Tribe v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994).  Moreover, the movant must prove the indispensability of a party as to each claim for which the movant seeks dismissal.

---

[2] In the present motion, filed March 20, 2000, the MRGCD also seeks dismissal for failure to join the U.S. Fish and Wildlife Service.  However, on March 30, 2000, Bruce Babbitt, Secretary of Interior was joined as a Defendant.  As the U.S. Fish and Wildlife Service is an agency under the auspices of the Secretary of Interior, this particular argument of the MRCGD is now moot.

See Davis, 192 F.3d at 962.

## Rule 19(a)--Necessary Party

Whether a person or entity is a necessary party under Rule 19(a) requires assessment of certain factors.  See Rishell, 94 F.3d at 1411 (paraphrasing Rule 19(a), considering subparagraphs 2(i) and 2(ii) separately).  Since these factors are stated in the disjunctive, a movant need only satisfy one to show that a party is necessary.  The MRGCD focuses on a single factor, derived from Rule 19(a)(2)(i), namely, "whether the absent party has an interest related to the suit which as a practical matter would be impaired."  Id.  Without question, the Pueblos of the Middle Rio Grande claim interests in the nature of rights to use water of the middle Rio Grande.  See New Mexico v. Aamodt, 618 F. Supp. 993, 1010 (D.N.M. 1985).  The question, then, is whether these interests would be impaired or impeded such that the Pueblos must be considered necessary parties to this case.

The MRGCD relies on the Special Master's report in Texas v. New Mexico, 352 U.S. 991 (1957) in which Texas sought to enforce the Rio Grande Compact by enjoining New Mexico from storing certain Rio Grande water.  See Green, J., Report of Special Master; Respecting Indispensability of the United States and of Elephant Butte Irrigation District, as Parties, Texas v. New Mexico, No. 9, Orig. (1953) at 3-4 (attached as Ex. A. to MRGCD's Motion for Stay). Texas also objected to storage of water in El Vado reservoir by the same six Pueblos that the MRGCD says are necessary parties to this action.  When a dispute arose between the United States, a non-party, and Texas as to whether the Compact overrode the Pueblos' claims, the Special Master concluded that the United States was an indispensable party "because of its interest in the rights of the Indians with respect to storage of water in El Vado."  Id. at 41.  The

MRGCD's arguments that the Pueblos are necessary all stem from its assertion that granting Plaintiffs' requested injunctive relief potentially would impact MRGCD's delivery of water to the Pueblos.[3]

There are a number of compelling reasons why the Pueblos are not necessary. First, two of the claims in this case are procedural. Claims I seeks compliance with the ESA's consultation process; claim V seeks compliance with NEPA procedures. At least with respect to the ESA procedural claim, Tribes are accorded a place in the consultation process. (See Appendix to Secretarial Order No. 3206, section 3C, cited in Plaintiffs' Memorandum at 7-8.) However, the Pueblos cannot be required to take part in the ESA consultation that Plaintiffs have asked the court to order in this case or in the actions under NEPA that Plaintiffs are requesting. The MRGCD has produced no evidence as to how the Pueblos would necessarily be affected by the outcome of this case.

As to their other claims, Plaintiffs expressly do not seek relief that would impact the Pueblos. (See Pls' Memo. in Opp. at 7; Pls' Memo. in Supp. of Motion for Prelim. Inj. at 2 n. 1.) The MRGCD characterizes this caveat as legally and factually impossible.[4] Why it would be

---

[3] The MRGCD makes a number of purportedly distinct arguments in section II.A. of its memorandum as to why the Pueblos are necessary parties. The MRGCD's only argument not based on Texas v. New Mexico is that granting the requested relief would impair tribal self-government. This assertion has no merit whatsoever.

[4] In its reply brief, the MRGCD takes the position that its motion should be granted for failure to join the Pueblos, or in the alternative, it should be denied only if San Juan/Chama water, not in beneficial use, is taken to satisfy a judgment. It would seem that the MRGCD's proposal of an alternative is a concession that the Pueblos are not indispensable. Nonetheless, I decline to deny the MRGCD's motion on that ground. Adoption of the MRGCD's alternative, because it is a proposed remedy rather than a legal argument, would be premature. As discussed infra, however, the possibility of using San Juan/Chama water not in beneficial to prevent the drying of critical habitat is a factor strongly suggesting that the Pueblos are not indispensable.

legally impossible to provide relief for the silvery minnow without disturbing Pueblo water rights is not clear, particularly in light of the repeated averments that the Pueblos have rights senior to most if not all middle Rio Grande water consumers. Unlike the plaintiff in Texas v. New Mexico, Plaintiffs in this case are not challenging Pueblo water rights. In view of the limited scope of Plaintiffs' requests in the First Amended Complaint, it may well be possible to fashion relief that would not impact the Pueblos. In sum, the six Middle Rio Grande Pueblos are not necessary to this case, in which no relief is sought against them, because the MRGCD has not shown their interests to be impaired or impeded.

Even if the Pueblos have claims or rights that are at risk of impairment or impediment, the Pueblos are not necessary parties because their interests are adequately represented by the Federal Defendants.[5] The Federal Defendants, who would certainly benefit as much from dismissal as the MRGCD, instead oppose the MRGCD's motion, in part because the Federal Defendants claim to represent the Pueblos. The presence of the Federal Defendants in this case further distinguishes it from Texas v. New Mexico. The MRGCD argues, however, that the Secretary of Interior's Indian trust duties conflict with his obligations under the ESA. "When there is a conflict between the interest of the United States and the interest of Indians, representation of the Indians by the United States is not adequate." Manygoats, 558 F.2d at 558. The Tenth Circuit in Manygoats discerned such a conflict. In that case the Navajo Tribe contracted with a corporation for uranium exploration and mining on tribal lands. The Secretary of Interior approved the contract,

---

[5] The Tenth Circuit has considered whether a party's interests are adequately represented in the framework of both Rule 19(a), see Manygoats v. Kleppe, 558 F.2d 556, 558 (10th Cir. 1977), and 19(b), see Enterprise Management Consultants, Inc. v. United States ex rel. Hodel, 883 F.2d 890, 894 (10th Cir. 1989).

which had triggered the need for an environmental impact statement.  The Tenth Circuit rejected the argument that the Secretary of Interior, a named defendant, represented the Tribe because the Secretary's duties under NEPA conflicted with the Tribe's interest in securing the benefits of that contract.  See id.  The Tenth Circuit ruled, therefore, that the Tribe was a necessary (but not indispensable) party.  See id. at 559.

Since Manygoats, the Supreme Court decided Nevada v. United States, 463 U.S. 110, 128 (1983), in which the Supreme Court discussed the Secretary of Interior's obligations to reclaim arid western land and the Secretary's trust responsibilities over Native Americans.  The court commented

> it may well appear that Congress was requiring the Secretary of the Interior to carry water on at least two shoulders when it delegated to him both the responsibility for the supervision of the Indian tribes and the commencement of reclamation projects in areas adjacent to reservation lands.  But Congress chose to do this, and it is simply unrealistic to suggest that the Government may not perform its obligation to represent Indian tribes in litigation when Congress has obliged it to represent other interests as well.  In this regard, the Government cannot follow the fastidious standards of a private fiduciary, who would breach his duties to his single beneficiary solely by representing potentially conflicting interests without the beneficiary's consent.  The Government does not "compromise" its obligation to one interest that Congress obliges it to represent by the mere fact that it simultaneously performs another task for another interest that Congress has obligated it by statute to do.

Nevada v. United States, 463 U.S. at 128.  Although the Supreme Court in Nevada v. United States compared the Secretary's trust obligations with his reclamation duties, rather than with his responsibilities under the ESA and NEPA, there is no apparent reason why these "observations" by the Supreme Court should not also guide the inquiry here.  Id.  As in Manygoats, the federal government in this case has an interest in ESA and NEPA compliance in a way that the Pueblos do not--yet the government can and does still coincidentally represent the Pueblos' interests.

In a rather similar case, the Ninth Circuit applied the principle stated in Nevada v. Hall, albeit without citing it, to conclude that the in question was not a necessary party. In Southwest Center for Biological Diversity v. Babbitt, 150 F.3d 1152, 1154 (9th Cir. 1998) the plaintiffs challenged, under the ESA and NEPA, a decision to increase the storage capacity of a reservoir. The plaintiffs claimed the government failed to take into account the fate of the flycatcher which had a major nesting ground near the dam. The Ninth Circuit held that a which had rights to a portion of the increased storage capacity water was not a necessary party. The court found no conflict between the government's Indian trust obligations and its obligations under environmental law. Instead, the government and the shared the same strong interest in defeating the plaintiffs' ESA and NEPA claims.

The only evidence the MRGCD produced in support of its position that the Secretary of Interior has a conflict of interest is a draft report of a "Working Group on the Endangered Species Act and Indian Water Rights: Implementation of Section 7 of the ESA in relation to Indian Water Resource Development." The draft acknowledges the existence of a "dilemma before the United States Government and the Tribes--how to protect Tribes' water rights and conserve endangered species." (MRCGD's Ex. A at 2.) But the draft also notes, as an objective, that the effect of an agency's development of a water resource on Indian water rights should be "consistent with the Federal trust responsibility for Indian natural resources." (Id. at 39.) Indeed, the rest of the draft is consistent with that proposed objective and illustrates well how the Secretary can and does

carry water on two shoulders in this case.[6]

The other arguments the MRGCD makes are also not persuasive.  The fact that the Secretary's lawyers are defending against the silvery minnow's habitat designation in another case (<u>Middle Rio Grande Conservancy District et al. v. Department of Interior et al.</u>, No. CIV 99-870 M/RLP-ACE) suggests that the Secretary's and the Pueblos' positions might diverge in that case, but not necessarily in this one.  Next, contrary to the MRGCD's view,  it is not at all clear the Secretary's position and the Pueblos positions might differ with respect to whether Pueblos are federal entities within the meaning of the ESA.  It is inappropriate, at this stage of the case, to speculate about what factual finding or adverse ruling might be made with respect to the Pueblos, against whom Plaintiffs seek no relief, or to assume that the Pueblos would somehow be collaterally estopped in some nebulous future case.  Finally, the MRGCD's alternate position that San Juan/Chama water not in beneficial use should be made available for the benefit of the silvery minnow before using native Rio Grande water does not support its indispensable party argument. Instead, the proposal indicates that the Pueblos are not necessary or indispensable parties by suggesting one possible remedy which would not impact them.

MRGCD does not address the contentions made by Plaintiffs and Federal Defendants that the MRGCD's active participation in this lawsuit further protects the Pueblos.  The MRGCD says that the Pueblos' stored water cannot be parsed from that of the MRGCD, and if this position is correct, then the MRGCD will certainly protect all interests in joint water.  On the other hand, if

---

[6] Official, rather than proposed, Department of Interior policy is that "the Services view their responsibilities under the ESA to restore and conserve endangered species as supportive of, and consistent with, their responsibilities as trustees to Indian people." U.S. Fish and Wildlife Service, <u>American Indian Tribal Rights, Federal-Tribal Trust Responsibilities, and the Endangered Species Act</u> (visited July 15, 2000) <http://endangered.fws.gov/tribal/Esatribe.htm>.

water interests can be parsed, the MRGCD's defense of its junior users will necessarily benefit senior Pueblo users. The Pueblos are not more necessary as parties than the MRGCD's other constituents.

### Rule 19(b)--Indispensable Party

Even if the Pueblos could be considered necessary parties, as was the Tribe in Manygoats, 558 F.2d at 558, they are not necessary.

> If an absent party is necessary but cannot be joined, the district court must then ascertain "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed.R.Civ.P. 19(b). If the district court concludes the action cannot proceed "in equity and good conscience," it must deem the absent party indispensable and dismiss the suit. See [Fed. R. Civ. P. 19(b)]; see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Rule 19(b) enumerates four factors which must be weighed by the district court when determining whether in equity and good conscience a suit can proceed in the absence of a necessary party:
>> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Davis, 192 F.3d at 959-60 (citing Fed. R. Civ. P. 19(b)).

The Tenth Circuit has also stated that when "a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." See Enterprise Management Consultants, Inc. v. United States ex rel. Hodel, 883 F.2d 890, 894 (10th Cir. 1989) (citations and quotations omitted). Unfortunately, the MRGCD reads this comment in a way that the Tenth Circuit did not intend. "[T]his court in Enterprise Management [did not hold] that immunity is so compelling by itself as to eliminate the need to weigh the Rule 19(b)

10

factors. The comments to that effect were dicta . . . ." Davis, 192 F.3d at 960.

When all the Rule 19(b) factors are weighed, it becomes clear that the Pueblos are not indispensable to this case. First, the extent to which a judgment rendered in the Pueblos' absence might be prejudicial is limited, if it exists at all. As the Tenth Circuit in Enterprise Management noted, this factor is essentially the same inquiry as that under Rule 19(a)(2)(i). See Enterprise Management, 883 F.2d at 849 n. 4. The presence of the MRGCD and the Secretary of Interior as parties to this case minimizes or completely eliminates any potential prejudice. Second, any prejudice likely can be lessened or avoided should injunctive relief become necessary given that Plaintiffs have expressly not sought relief that would impact the Pueblos and the MRGCD itself has presented a proposal which would not involve Pueblo water rights. Third, should Plaintiffs prevail, adequate relief could be fashioned as to their ESA and NEPA claims without the Pueblos' involvement. See Rishell, 94 F.3d at 1412-13. These first three factors set out in Rule 19(b) all counsel against dismissal.

The fourth factor listed in Rule 19(b) is the most significant and points convincingly in favor of denying the MRGCD's motion to dismiss for failure to join the Pueblos. The lack of an alternative forum has strong "negative significance under Rule 19" and "weigh[s] heavily, if not conclusively against dismissal." Rishell, 94 F.3d at 1413. It appears that Plaintiffs would not "have an adequate remedy" if their claims in this action were to be dismissed on the ground that the Pueblos, which cannot be forced into this case, are indispensable parties. Fed. R. Civ. P. 19(b). The MRGCD has not pointed to "tribal remedies or procedures available to the

11

plaintiff[s]." Manygoats, 558 F.2d at 559.[7]  Instead, it appears that Plaintiffs have no other forum but this one.  The MRGCD's position, if adopted, would render the ESA and NEPA meaningless with respect to the silvery minnow.  The silvery minnow's listing as endangered and the designation of its critical habitat would be essentially for naught without a forum in which to enforce the benefits accruing from those determinations.  If Plaintiffs were to be foreclosed from proceeding in this court, it would result in a most ironic and incongruous situation.  Then, only the Pueblos, by waiving sovereign immunity, would be in a position to enter federal court voluntarily to enforce the silvery minnow's status–exactly the sort of anomalous result the Tenth Circuit in Manygoats rejected.  See id.  In short, "equity and good conscience" require that this "action should proceed among the parties before" the court.  Fed. R. Civ. P. 19(b).  The Pueblos are not indispensable parties.

Just as in Dickman v. City of Santa Fe, 724 F.Supp. 1341, 1344 n. 4 (D.N.M. 1989), in which I declined to consider the "public rights" exception to Rule 19 that courts outside of the Tenth Circuit have recognized, I decline to do so here.

IT IS THEREFORE ORDERED THAT Defendant Intervenor Middle Rio Grande Conservancy District's motion to dismiss for failure to join indispensable parties (Doc. No. 31) is denied.

                                                   /s/ James A. Parker
                                            UNITED STATES DISTRICT JUDGE

---

[7] The MRGCD argues that the consultation process is "an adequate remedy" within the meaning of Rule 19(b).  Unfortunately, the consultation process has, thus far, not proven adequate.  Whether the ongoing consultations, for which no end is in sight, will ultimately serve their purpose remains to be seen.  The court would like to be optimistic, but because of the present posture of the case, has no reason to be sanguine.