## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RIO GRANDE SILVERY MINNOW
(Hybognathus amarus); SOUTHWESTERN
WILLOW FLYCATCHER (Empidonax
trailii extimus); DEFENDERS OF
WILDLIFE; FOREST GUARDIANS;
NATIONAL AUDUBON SOCIETY; NEW
MEXICO AUDUBON COUNCIL; SIERRA
CLUB; and SOUTHWEST
ENVIRONMENTAL CENTER,

      Plaintiffs,

vs.                                                                 No. CIV 99-1320 JP/RLP-ACE

ELUID L. MARTINEZ, Director, Bureau
Reclamation; MICHAEL R. GABALDON,
Regional Director, Bureau of Reclamation;
BUREAU OF RECLAMATION, an agency
of the United States; GEN. JOSEPH
BALLARD, Chief Engineer, Army Corps of
Engineers; LT. COL. TOM FALLIN,
Albuquerque District Engineer, U.S. ARMY
CORPS OF ENGINEERS, an agency of the
United States; the UNITED STATES,
BRUCE BABBITT, Secretary, Department
of Interior,

      Federal Defendants,

MIDDLE RIO GRANDE  CONSERVANCY
DISTRICT,

      Defendant-Intervenor,

STATE OF NEW MEXICO,

      Defendant-Intervenor,

CITY OF ALBUQUERQUE,

      Defendant-Intervenor.

## MEMORANDUM OPINION AND ORDER

### I.      Background

On November 15, 1999 Plaintiffs filed their Complaint.  On January 21, 2000 the Middle

Rio Grande Conservancy District (MRGCD) moved to intervene under Federal Rule of Civil

Procedure 24.  The MRGCD's motion was unopposed.  Plaintiffs also did not oppose the next

application to intervene, made on June 12, 2000 by the State of New Mexico.  Moreover,

Plaintiffs did not oppose the next application to intervene, filed on July 3, 2000 by the City of

Albuquerque, although Plaintiffs agreed to the City of Albuquerque's intervention only upon the

satisfaction of certain conditions.

The court granted the applications to intervene by the MRGCD, State of New Mexico,

and City of Albuquerque mainly because of Plaintiffs' consent.  For the same reason, the court on

July 13, 2000 granted the unopposed request of the National Association of Industrial and Office

Professionals and Albuquerque Economic Forum to file an amicus brief with respect to the now-

dismissed motion for summary judgment.

On September 22, 2000 the City of Santa Fe moved to intervene as a defendant.  On

October 24, 2000 Double M Ranch, LLC moved to intervene as a defendant.  On November 8,

2000 the Rio de Chama Acequia Association moved to intervene as a defendant.  All three moved

to intervene under Federal Rule of Civil Procedure 24(a)(2), or in the alternative, Rule 24(b).

Plaintiffs oppose the motions.  The City of Albuquerque has filed a brief in support of the City of

Santa Fe's motion.  The other parties have not expressed a position to the court.

## II.      Rule 24(a)(2)

Rule 24(a)(2) provides a means for intervention as a matter of right.  The Tenth Circuit

has distilled four factors from Rule 24(a)(2) for courts to assess when an applicant claims a right

to intervene.  See Coalition of Arizona/New Mexico Counties for Stable Economic Growth v.

Department of the Interior, 100 F.3d 837, 840 (10th Cir. 1996).  An applicant may intervene as of

right if:

> (1) the application is "timely";
> (2) "the applicant claims an interest relating to the property or transaction which is the
> subject of the action";
> (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and
> (4) "the applicant's interest is [not] adequately represented by existing parties."

Id. (quoting Fed. R. Civ. P. 24(a)(2)).

### A.      Timeliness

"The trial court must determine timeliness in light of all of the circumstances."  Sanguine,

Ltd. v. Department of Interior, 736 F.2d 1416, 1418 (10th Cir. 1984) (citing NAACP v. New

York, 413 U.S. 345, 366 (1973).  Factors for consideration include the length of time since the

applicant knew of its interest, prejudice to the existing parties and the applicant,[1] and the existence

of any unusual circumstances.  See id. (citations omitted).

All three pending applications for intervention are rather late.  Much has already

transpired.  The parties have briefed various motions to dismiss upon which the court has ruled.

---

[1] The Tenth Circuit has considered the impact of additional parties on case management in
the context of whether existing parties adequately represent the applicants.  See NRDC v. NRC,
578 F.2d 1341, 1386 (10th Cir. 1978).  In FDIC v. Jennings, 816 F.2d 1488, 1492 (10th Cir.
1987) the court engaged in a similar inquiry in its discussion of the interest and impairment
requirements.  The applicants and the City of Albuquerque address concerns about case
management in varying parts of their analyses.

The court then stayed the case and submitted it for intensive mediation lasting several months. Although mediation ultimately proved unsuccessful, it certainly provided a forum in which issues were focused and information exchanged.

It is troublesome that the applicants did not act before all this. For example, the City of Santa Fe claims that Plaintiffs' motion for preliminary injunction alerted it of the need to intervene in April 2000, but it offers no explanation why it delayed doing so until September 2000. On the other hand, the unusual importance of this case and the possibility of prejudice weigh in the applicants' favor. The circumstances of this case and these motions present a very close question as to the timeliness factor--a question which would likely be decided differently if the motions were any later. However, I cannot conclude the applicants' motions to intervene are untimely.

### B.    Interests and impairment

#### 1.    City of Santa Fe

The City of Santa Fe asserts an interest in whether San Juan-Chama Project water to which it claims rights can be released for the benefit of the silvery minnow. Plaintiffs do not argue that the City of Santa Fe does not have an interest in this water or that it would not be impaired.

#### 2.    Double M Ranch, LLC and the Rio de Chama Acequia Association (collectively "Rio Chama applicants")

The Double M Ranch farms 240 acres along the Rio Chama below Abiquiu Dam. The Double M Ranch claims an interest in native Rio Chama Water as well as in San Juan-Chama Project water leased from others. The Rio de Chama Acequia Association represents twenty-seven member acequias located along the Rio Chama from El Vado Dam to the Rio Chama's confluence with the Rio Grande. These acequias convey native Rio Chama water to over one

4

thousand owners or users.  The Rio de Chama Acequia Association also claims an ownership interest in San Juan-Chama Project water stored behind Abiquiu Dam.  The Rio Chama applicants contend that Plaintiffs seek to impair these interests and in fact did impair these interests in the summer of 2000 when access to native water flowing in the Rio Chama was restricted.  The Rio Chama applicants also suggest that the August 2, 2000 Agreed Order and a "secret agreement" to deplete the upstream reservoirs impaired their interests or will do so in the future.

Rule 24(a) requires that an applicant have an interest "relating to . . . the subject of the action" which "may as a practical matter" impair or impede the applicants' interests.  In order to determine whether an applicant has an interest which this case may impair or impede, fact must first be separated from fiction.  First, there is no "secret agreement."  The parties have thus far reached one agreement, embodied in the Agreed Order filed on August 2, 1999 and a supplement filed on October 5, 2000.  Both are public documents.[2]  Neither provides for the benefit of the silvery minnow any San Juan-Chama Project water or native Rio Chama water to which the Double M Ranch or the Rio de Chama Acequia Association makes a claim.  Moreover, the summer 2000 disruption to diversions along the Rio Chama came and went before the parties implemented the August 2, 2000 Agreed Order.  Thus, the Agreed Order did not affect the Rio Chama applicants.

Whether the Agreed Order or any other possible remedy <u>may</u> affect the Rio Chama applicants in the future poses a different question.  Plaintiffs to this point have been somewhat coy about the relief they seek.  Plaintiffs have, in pleadings other than their Complaints, proposed

---

[2] So too are various status reports and status memoranda updating non-parties as to the progress of the mediation, which has ended.

various possible remedies.  (See, e.g., Pls' Memo. In Supp. of Mot. for Prelim. Inj. at 30-33.)

Clearly they had their sights set on San Juan-Chama water, at least before massive water releases

late last summer.  (See id.; Agreed Order at 3-4.)  Originally they may have also considered

various sources of native water.  (See First Am. Compl. at ¶ 24B.)  However, the only relief

Plaintiffs have actually requested has been in terms of the desired result, without mention of a

specific method or water source.  (See First Am. Compl. at 24-26; Pls' Mot. for Prelim. Inj. at 1.)

Indeed in their memorandum supporting their motion for preliminary injunction, Plaintiffs

expressly took the position that specific methods for compliance are properly left to the two

originally named Defendants: the Bureau of Reclamation and the Corps of Engineers.  (See Pls'

Memo. In Supp. of Mot. for Prelim. Inj. at 29.)  Now, Plaintiffs disclaim any relief that would

affect "native water rights in the Chama River," Pls' Opp. to Rio de Chama Acequia Assn at 5-6

and/or "native water rights in the Middle Rio Grande area," Pls' Opp. to Double M Ranch, LLC

at 5.

        Therefore Plaintiffs' latest position appears to be that the subject of the action does not

involve native Rio Chama water but does involve San Juan-Chama Project water.  Even if

Plaintiffs' claim is so limited, the Rio Chama applicants have interests that may yet be impaired.

As to the applicants' interests in San Juan-Chama Project water, Plaintiffs have never, even in

response to the Double M Ranch's claim to San Juan-Chama water, disclaimed any relief that

might affect it.[3]  Thus, the Rio Chama applicants' San Juan-Chama Project water interests may be

adversely affected in the future even if they have not been to this point.  However, were the Rio

---

        [3] The Rio de Chama Acequia Association also alleged an interest in San Juan-Chama Project water, but not until if filed its reply brief.  Hence, Plaintiffs did not have an opportunity to address this belated claim.

Chama applicants' San Juan-Chama water rights their only interests possibly impeded, the court would conclude that present parties adequately represent those interests.  But, the Rio Chama applicants' interests are more far-ranging.

The Rio Chama applicants' primary interest is in native Rio Chama water.  Even if Plaintiffs do not seek to disturb native Rio Chama water, this case may have that unintended consequence, for two reasons.  The first is illustrated by events on the Rio Chama this past summer.  On June 1 or 2, 2000 the Rio Chama Watermaster prioritized native Rio Chama water interests on the "Mainstream Section" of the Rio Chama, in anticipation of a possible native water shortage during June, July, August, September and October.  The Watermaster on June 26, 2000 terminated diversions into some of the lower-priority acequias, apparently represented by the Rio de Chama Acequia Association.[4]  On June 26, 2000 the Watermaster also terminated diversion into a ditch to which the Double M Ranch apparently claims rights.[5]  On July 7, 2000 the Watermaster terminated diversions into some higher priority acequias and ditches.  On July 17,

_____

[4] The Rio de Chama Acequia Association claims to represent twenty-seven acequias, but has not identified them.  However, the Watermaster's Authorization to Resume Diversion appears to describe every previously closed ditch as a member of the Rio de Chama Acequia Association.  (See Pls' Opp. to Rio de Chama Acequia Ass'ns Mot. to Intervene, Ex. A at unnumbered page 4.)  It states, "This document is mailed to the Commissioners and Mayordomos of those Acequias, listed below, members of the Rio Chama Acequia Association that were ordered to terminate diversion on the dates listed, for the reason of water shortage to the purpose of irrigation on the Rio Chama below El Vado Reservoir."  (Id.)

[5] Double M Ranch refers to the acequia from which it has rights to appropriate water as the "Jose Pablo Gonzales ditch."  (Memo. in Supp. of Double M Ranch at 4.)  A document which Double M Ranch attaches, from the State Engineer, makes reference to a "Joe Pablo Gonzales" ditch.  (See., e.g., Double M Ranch, LLC's Reply Ex. 2.)  The Watermaster's Authorization to Resume Diversion lists the "Acequia J.P. Gonzales" as among those for whom diversion was terminated on June 26, 2000 and suggests that ditch is a Rio de Chama Acequia Association member.  (See Pls' Opp. to Double M Ranch, LLC's Mot. to Intervene, Ex. A at unnumbered page 4.)  I have assumed that each reference is to the same ditch.

2000 the Watermaster authorized all diversions to resume.  The Rio Chama applicants blame Plaintiffs for the Watermaster's actions.

As previously noted, the implementation of the Agreed Order cannot have caused the Watermaster's actions since the Watermaster terminated and resumed diversions before the Agreed Order took effect.  However, actions leading up to the Agreed Order may have caused the Watermaster to halt certain diversions.  More importantly, use of San Juan-Chama water--the centerpiece of the Agreed Order and its supplement--may yet cause disruptions similar to those that occurred in June and July of 2000 for Rio Chama irrigators.

A letter dated June 27, 2000 from Paul Saavedra, Chief of the Water Rights Division of the Office of the State Engineer indicates in clear, certain terms that the Watermaster in June 2000 prioritized the Rio Chama and began to close ditches to insure that ditch users bypassed San Juan-Chama water.[6]  (See Double M Ranch LLC's Reply Ex. 2.)  As Plaintiffs point out, the Rio Chama applicants must have been quite frustrated to see the Rio Chama brimming full with San Juan-Chama Project water while their acequias had been ordered shut.  The Rio Chama applicants must also have been chagrined to learn that the Watermaster had ordered their acequias closed for

---

[6] No one attempts to reconcile this reason for diversion cessation with the Watermaster's ambiguous indication on July 17, 2000 that he had terminated diversions "for the reason of water shortage to the purpose of irrigation on the Rio Chama below El Vado Reservoir."  (See Pls' Opp. to Rio de Chama Acequia Ass'ns Mot. to Intervene, Ex. A at unnumbered page 4.)

the benefit of the downstream flow of San Juan-Chama water.[7]  Whether the Bureau of

Reclamation or the Corps of Engineers or anyone else released San Juan-Chama Project water

during June and early July 2000 in an effort to avert a hearing on Plaintiffs' motion for preliminary

injunction is not clear.  But the answer is largely irrelevant.  There is no reason to believe that the

Rio Chama Watermaster will not again order closed Rio Chama ditches carrying native Rio

Chama water in an effort to insure that San Juan-Chama Project water is bypassed.  As long as

the parties consider using San Juan-Chama Project water for the benefit of the silvery minnow and

as long as native water diversions might be discontinued to insure its bypass, the holders of rights

to native Rio Chama water need a voice.

 The second way in which native Rio Chama water may be disturbed, even unintentionally,

stems from its commingling with San Juan-Chama Project water in the reservoirs along the Rio

Chama.  Plaintiffs attempt to downplay the practical dilemma of separating native from non-native

water by contending that the Bureau of Reclamation, by statute, keeps a careful record of the

precise quantities and locations of San Juan-Chama Project water.  Whether the Bureau of

Reclamation actually is able to accomplish this feat accurately so as to preclude all doubt about

whether water is native or non-native is questionable.  Moreover, none of the present parties has

any significant incentive to prove whether the quantity of native Rio Chama water in storage

together with San Juan-Chama Project water is actually greater than the Bureau of Reclamation

---

 [7] The Rio Chama applicants may have experienced even more vexation if the
Watermaster's actions in June and July of 2000 had caused the bypassing of San Juan-Chama
Project water to which they had rights.  However, Plaintiffs in their response brief assert that the
Rio Chama applicants had no rights to the San Juan-Chama water which bypassed the Rio Chama
applicants in June and July of 2000.  The Rio Chama applicants in reply assert that they do have
an interest in some San Juan-Chama Project water, but they do not indicate that their San Juan-
Chama water was part of the water bypassed during June and July 2000.

or any other present party says it is.  Similarly, none of the present parties has any obvious inclination to object to the alleged recent practices of using native Rio Chama water for carriage of San Juan-Chama water and allocating disproportionally greater seepage losses to native water as opposed to San Juan-Chama Project water.  As long as the parties consider using San Juan-Chama Project water for the benefit of the silvery minnow and as long as San Juan-Chama Project water is mixed with native Rio Chama water, someone with an interest in native Rio Chama water should be entitled to make their position heard.

### C.      Adequacy of existing representation

The burden is on the applicant to show that representation by existing parties is inadequate.  See Coalition, 100 F.3d at 844 (citing, inter alia, Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972).  An applicant meets this burden by showing that the representative's interest is adverse to the applicant's.  See id. (quoting Sanguine, 736 F.2d at 1419).  Representation is adequate "when the objective of the applicant for intervention is identical to that of one of the parties."  Id. (quoting City of Stilwell v. Ozarks Rural Elec. Co-op. Corp., 79 F.3d 1038, 1042 (10th Cir. 1996)).

### 1.      City of Santa Fe

### a.      New Mexico and the United States

New Mexico, the Bureau of Reclamation, the Corps of Engineers, and the Department of Interior do not, or at least cannot within the meaning of Rule 24(a)(2), represent the City of Santa Fe's interests.  See Coalition, 100 F.3d at 845.  The Tenth Circuit in Coalition characterized that case challenging the listing of an endangered owl as presenting "the familiar situation" in which a governmental agency seeks to protect public and private interests at once, "a task which on its

10

face is impossible." See id. (quotations omitted) (finding that defendant Department of Interior does not represent adequately wildlife photographer/biologist/naturalist with an interest in observing the owl in its natural habitat and holding that district court erred in allowing citizen to participate merely as amicus) (citing with approval Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 1000-01 (8th Cir. 1993) (rejecting argument that state adequately represented counties and landowners in suit challenging application of state wild game laws to Indian tribe)). Cf. Environmental Defense Fund v. Costle, 79 F.R.D. 235, 240-43 (D.D.C. 1978) (finding proposed intervenors, including water districts, utilities, municipalities, and irrigators not entitled to intervene in case concerning river salinity levels because states already adequately represented their interests.)

### b.    City of Albuquerque and the MRGCD

Whether the MRGCD and, especially the City of Albuquerque, represent Santa Fe's interest presents a different question.  In apparent agreement that the MRGCD, Albuquerque, and Santa Fe each has an interest it seeks to protect in San Juan-Chama Project water, Santa Fe contends that each San Juan-Chama interest is distinct.  "Albuquerque's objective is to protect Albuquerque's water . . . Santa Fe's objective is to protect Santa Fe's water."  (See Santa Fe's Reply at 10.)  Plaintiffs' position is that these objectives are identical, and that, moreover, Albuquerque and the MRGCD (as well as New Mexico) make the same arguments in furtherance of these objectives as Santa Fe would make.[8]

---

[8] Plaintiffs represent that the two largest of approximately eleven San Juan-Chama contractors are Defendant-Intervenor the City of Albuquerque (48,200 acre-feet) and Defendant-Intervenor the Middle Rio Grande Conservancy District (20,900 acre-feet).  (See Pls' Opp. at 6.) Santa Fe's contract is for 5,605 acre-feet.  Neither Albuquerque nor Santa Fe do anything to dispel these assertions in subsequent briefs.

Santa Fe relies heavily on NRDC and also Coalition.  In NRDC, Kerr-McGee, a potential licensee, and the American Mining Congress (AMC), an association of mining concerns, sought to intervene in an action brought by an environmental group against a federal agency and a state agency to block the issuance of licenses to operate uranium mills in New Mexico.  See NRDC, 578 F.2d at 1342.  Another mining company, United Nuclear, had already intervened without opposition and already had been issued a license.  See id. at 1343.  The trial court denied Kerr-McGee's and AMC's motions to intervene because United Nuclear, as "a fellow member of the mining industry" adequately represented the movants' interests.  See id. at 1345.

The Tenth Circuit reversed the trial court for an handful of reasons.  The first stems from the Tenth Circuit's determination that United Nuclear was "situated somewhat differently" from the applicants because it had already been granted a license.  See id.  From this, the Tenth Circuit acknowledged the remote possibility that United Nuclear would be willing to concede that an environmental impact statement should be issued but only with prospective application that would not affect United Nuclear.  See id. at 1346.  Also because United Nuclear already had its license, it had a defense of laches that was unavailable to the applicants.  See id.  Finally, the Tenth Circuit noted the value in having the parties, particularly AMC, which represented companies with a wide variety of interests, before the court so that they would be bound by the result.  See id.

Santa Fe derives from NRDC and other cases the proposition that objectives must be identical.  Certainly when objectives are identical, representation is adequate.  See, e.g., Coalition, 100 F.3d at 845; see also Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir. 1986) and City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1045-46 (10th Cir. 1996).  However, close attention to NRDC, Coalition, and the other Tenth Circuit cases on which Santa

Fe relies reveals nothing to suggest that representation by an existing party is adequate <u>only</u> when objectives are identical.  Indeed, <u>NRDC</u> expressly leaves open the possibility that intervention may be inappropriate when interests are <u>not</u> identical but merely similar.  In such situations a party "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee" and that "a discriminating judgment is required on the circumstances of the particular case."  <u>NRDC</u>, 578 F.2d at 1346 (quotation omitted).

The circumstances of this case are decidedly different from those in <u>NRDC</u>.  While Santa Fe's objective may be to protect its own water, in this case that is San Juan-Chama water, just like Albuquerque's and also like the MRGCD's.  Even if it could be said be said that Santa Fe has distinct or divergent interests and/or objectives, Santa Fe has failed to show that any distinction or divergence makes a difference.  For instance, it may be true that Albuquerque's greater gross amount of water and differing water demands may possibly make Albuquerque more inclined than Santa Fe to offer San Juan-Chama water for protection of the silvery minnow.  But Santa Fe does not explain how Albuquerque, or the MRGCD for that matter, would be in a position to offer anyone else's San Juan Chama-Project water.  More significantly, Albuquerque and the MRGCD would first fashion arguments in defense of their own San Juan-Chama water that would apply equally to Santa Fe.  The technical difference in water contracts does not change the result. Albuquerque's San Juan-Chama rights are in perpetuity under a repayment contract, while Santa Fe's contract is subject to renewal.  Albuquerque's permanent interest in and reliance upon San Juan-Chama water suggests that Albuquerque would be more, not less, vigorous and vociferous than Santa Fe in opposing use of this water for the silvery minnow.  Although Albuquerque has filed a brief disclaiming that it can adequately represent Santa Fe, this does not change the result.

13

Albuquerque's and the MRGCD's defenses of their own San Juan-Chama Project water, which comes from a source indistinct from Santa Fe's San Juan-Chama Project water, will raise adequately any arguments which Santa Fe might make.

### 2.      Rio Chama applicants

The State of New Mexico, through the State Engineer and his agent the Rio Chama Watermaster, has already acted adversely to the Rio Chama applicants' interests.

Albuquerque and the MRGCD do adequately represent the interests of San Juan-Chama Project water users, contractors or lessees.  However, neither Albuquerque nor the MRGCD, nor any of the other present parties, have an interest similar to that of the Rio Chama applicants in native Rio Chama water.

The question then becomes whether the two Rio Chama applicants have between themselves interests so divergent that each has a right to intervene.  The Rio de Chama Acequia Association speaks for twenty-seven acequias along the Rio Chama.  As previously noted, it appears that the Rio de Chama Acequia Association even represents the ditch in which the Double M Ranch claims rights--the Acequia Jose Pablo Gonzales.  In any event, the Rio de Chama Acequia Association has a diverse constituency and is positioned to speak for many acequias and numerous acequia users.  Including the Rio de Chama Acequia Association as a party to this action would provide the opportunity to settle issues with respect to multiple native Rio Chama water users.  The Double M Ranch, on the other hand, is just one user of one acequia.  It may be more inclined to obtain a resolution favorable to its farming interests that might leave other native Rio Chama water users unsatisfied.  The more broad-based Rio de Chama Acequia Association would adequately represent the interests of the Double M Ranch.  Therefore, the Double M

Ranch, LLC's motion to intervene under Rule 24(a)(2) will be denied on the ground that its interest will be adequately represented by the Rio de Chama Acequia Association, whose motion to intervene will be granted.

## III.    Rule 24(c)

A motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The Rio de Chama Acequia Association attaches to its motion a "Petition in Intervention." Plaintiffs argue that the Rio de Chama Acequia Association's "Petition in Intervention" fails to comply with Rule 24(c).

The Rio de Chama Acequia Association's "Petition in Intervention" resembles a complaint in all but name. Even if Rio de Chama's "Petition in Intervention" cannot be considered a "pleading" setting forth the claim or defense for which intervention is sought, it apprises the court and the parties of the nature of the Rio de Chama Acequia Assocation's claims and is therefore sufficient under Rule 24(c). See Alvarado v. J.C. Penney Co., 997 F.2d 803, 805 (10th Cir. 1993); Spring Const. Co., Inc. v. Harris, 614 F.2d 374, 376-77 (4th Cir. 1980). Moreover, the Rio de Chama Acequia Association cured any technical defect by re-styling its Petition as a "Complaint in Intervention."[9] See EEOC v. Local 310 Laborers' Int'l Union of North America, No. 1:96 cv 1293, 1997 US Dist. LEXIS 7923 at *6 (N.D. Ohio March 3, 1997).

_____

[9] The Rio de Chama Acequia Association in its six-count Complaint, which is almost identical to its Petition, brings (1) an action against all parties for declaratory judgment barring a confidential settlement, (2) an action against all parties for an injunction barring enforcement of a confidential settlement agreement; (3) a procedural due process claim against "the Federal and State of New Mexico Defendants" for depriving it of property rights, (4 and 5) an action against all parties for declaratory judgment that it owns works including El Vado, Abiquiu, and Heron Lake Reservios and that sections 7 and 9 of the Endangered Species Act do not apply to it, and (6) an action against all parties for an injunction against use of native "waters" for the benefit of the endangered species Plaintiffs.

15

Although the Rio de Chama Acequia Assoication's "Petition in Intervention" and "Complaint in Intervention" adequately inform the court and the parties of the nature of its claims, the Rio de Chama Acequia Association never indicates whether it seeks to intervene as a plaintiff or defendant.  The "primary purpose," <u>Indianapolis v. Chase National Bank</u>, 314 U.S. 63, 69 (1941), of Plaintiffs' suit is to secure more and/or improved habitat for the silvery minnow by assuring a larger water flow.  The main "collision of interest," <u>id.</u>, that the Rio de Chama Acequia Association has is with Plaintiffs.  Accordingly, the Rio de Chama Acequia Association should be considered a Defendant-Intervenor.  The Rio de Chama Acequia Association must respond to Plaintiffs' First Amended Complaint by April 20, 2001.  The parties against whom the Rio de Chama Acequia Assoication makes what amount to cross- and counter-claims will be permitted to file responsive pleadings by May 4, 2001.

## IV.  Rule 24(b)

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . .  In exercising its sound discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).  Construing Rule 24(b) in <u>Allen Calculators, Inc. v. National Cash Register, Co.</u>, 322 U.S. 137 (1944), which has not changed in relevant part, the Supreme Court commented:

> It is common knowledge that, where a suit is of large public interest, the members of the public often desire to present their views to the court in support of the claim or the defense.  To permit a multitude of such interventions may result in accumulating proofs and arguments without assisting the court.

<u>Allen Calculators</u>, 322 U.S. at 141-42.  The Tenth Circuit has held that a district court did not abuse its discretion under Rule 24(b) in denying a motion to intervene where intervention could

delay proceedings and where the applicants failed to establish "with 'sufficient probability'" inadequate representation.  Shump v. Balka, 574 F.2d 1341, 1345 (10th Cir. 1978).

Santa Fe and the Double M Ranch argue that common questions of fact exist, namely, that Plaintiffs seek their water.  Plaintiffs take no position as to the existence of common factual questions, the relevant predicate to granting a Rule 24(b) motion.  Instead, they point to factors which they claim militate against the exercise of discretion in the applicants' favor.

The court will exercise its discretion to deny Santa Fe's and the Double M Ranch's motions under Rule 24(b) for reasons previously explained.  In sum, they have not shown that they would be inadequately represented.  Instead, it appears that their intervention would add little if anything to the case.  Already there appears to be much redundancy.  Adding more litigants and lawyers to make the same or substantially similar arguments would be of no apparent benefit.  On the other hand, contrary to what Santa Fe and Double M Ranch might contend, there can be no serious dispute that their addition would slow litigation.

## V.    Conclusion

The court is mindful of Senior Judge Mechem's recognition of the value of Judge DeGiacomo's mediation efforts in this case.  See Middle Rio Grande Conservancy Dist. v. Babbitt, No. CIV 99-870, 99-872, 99-1445 M/RLP (consolidated), Memo. Op. and Order at 62-63, (D.N.M. Nov. 21, 2000).  Certainly, as Judge Mechem indicated, the Fish and Wildlife Service had in Judge DeGiacomo's courtroom a forum for presenting new findings concerning critical habitat designation.  (See id.)  However, neither Judge Mechem's decision, nor this Memorandum Opinion and Order, nor some of the arguments made in the briefing of the motions to intervene should be construed as an open invitation for additional motions to intervene,

particularly now that so much time has passed.

The City of Albuquerque contends that "it makes sense to have everyone with water before the court." (Albuq. Reply at 5.) In fact, it does not at all make sense to have everyone with water interests before the court, particularly where there is, or will be, an array of Defendants making the same arguments that the applicants for intervention would make. To bring into the case everyone with a claim to Rio Grande, Rio Chama, and San Juan-Chama Project water, would make "'the conglomeration . . . unmanageable.'" <u>FDIC v. Jennings</u>, 816 F.2d at 1490 (quoting <u>FDIC v. Jennings</u>, 107 F.R.D. 50, 55 (W.D. Okla. 1985)). If this were a water rights adjudication, the City of Albuquerque's argument would have more validity. Instead, this is a case brought under the ESA and NEPA in which mass intervention, as a general rule, would be detrimental rather than helpful. No one has yet presented the court with authority requiring that in order to provide Plaintiffs with relief, if it proves warranted, the court must determine who among the vast numbers of municipalities, irrigation districts, conveyance associations, farmers, ranchers, and other water users in the Rio Grande watershed must be ordered to relinquish San Juan-Chama water and/or native water to benefit the silvery minnow. Until someone does, not every entity with an interest in water should be permitted to intervene.

IT IS THEREFORE ORDERED THAT

(1) the City of Santa Fe's motion to intervene (Doc. No. 143) is denied;

(2) the Double M Ranch, LLC's motion to intervene (Doc. No. 155) is denied; and

(3) the Rio de Chama Acequia Association's motion to intervene (Doc. No. 166) is granted.

IT IS FURTHER ORDERED THAT

18

(1) the Rio de Chama Acequia Association must respond to Plaintiffs' First Amended Complaint by not later than April 20, 2001 and

(2) any party against whom the Rio de Chama Acequia Assocation makes what amount to cross- and counter-claims must file any responsive pleadings by not later than May 4, 2001.


_____
**CHIEF UNITED STATES DISTRICT JUDGE**

19