# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

RIO GRANDE SILVERY MINNOW, et al.,

    Plaintiffs,

vs.                                                   No. CV 99-1320 JP/RHS-ACE

JOHN W. KEYS III, et al., ,

    Federal Defendants,

MIDDLE RIO GRANDE CONSERVANCY
DISTRICT, et al.,

    Defendant-Intervenors.

## **MEMORANDUM OPINION**

On June 24, 2005 Plaintiffs[1] and Defendant-Intervenor City of Albuquerque filed a Stipulation and Joint Motion for Dismissal of Any and All Claims Regarding the San Juan-Chama Project or San Juan-Chama Water (Doc. No. 659). This joint motion is based upon a settlement of all claims between Plaintiffs and the City of Albuquerque. Defendant-Intervenor State of New Mexico objected to portions of the stipulation and joint motion, and filed motions requesting rulings on its pending motions for dismissal and vacatur (Doc. Nos. 661, 662). Federal Defendants[2] and Defendants-Intervenors[3] had previously filed numerous interrelated motions

---

[1] Plaintiffs are the Rio Grande Silvery Minnow and another species listed as endangered, and several non-profit environmental and conservation organizations acting on behalf of the listed species.

[2] In addition to Keys, Commissioner of the Bureau of Reclamation, Federal Defendants are the United States of America, three federal agencies (Bureau of Reclamation, U.S. Army Corps of Engineers, and U.S. Fish and Wildlife Service), various agency officials sued in their official capacities, and Gale Norton, Secretary, Department of Interior.

[3] In addition to the City of Albuquerque and the State of New Mexico, Defendants-Intervenors include the Middle Rio Grande Conservancy District and the Rio Chama Acequia Association.

seeking to dismiss the remaining claims in Plaintiffs' Third Amended Complaint as moot,[4] and to vacate this Court's prior rulings.[5]  On August 16, 2005 the Court held a hearing on all pending motions.  At the hearing, counsel for the City of Albuquerque indicated that it was no longer pursuing its motion to dismiss (Doc. No. 604) or its motion to vacate (Doc. No. 587) in light of the settlement the City had reached with Plaintiffs.  Having made a careful review of the pleadings, the relevant case law, and the arguments of counsel, the Court will grant in part and deny in part the motions to dismiss, will approve the stipulation and grant the joint motion for (partial) dismissal, in part, and will deny the motions to vacate.

**I. Background.**  This case concerns the plight of the Rio Grande silvery minnow in its last remaining natural habitat in the middle Rio Grande in New Mexico.  Litigation under the Endangered Species Act ("ESA") has been ongoing for many years.  On April 19, 2002 this Court entered a Memorandum Opinion and Order affirming the June 29, 2001 Biological Opinion ("BO"), which the Plaintiffs had challenged in an appeal of agency action.  <u>Rio Grande Silvery Minnow v. Keys</u>, 2002 WL 32813602 (D.N.M. Apr. 19, 2002).  Although the Court affirmed the BO, the Court also ruled, among other things, that the United States Bureau of Reclamation ("BOR") had discretion over contract water deliveries under the Middle Rio Grande Project

---

[4] The Motions to Dismiss are:  State of New Mexico's Cross-Motion for Dismissal (and Vacatur of Prior Orders), filed March 22, 2004 (Doc. No. 580); Federal Defendants' Motion to Dismiss, filed June 1, 2004 (Doc. No. 601); City of Albuquerque's Motion to Dismiss Plaintiffs' Third Amended Complaint, filed June 1, 2004 (Doc. No. 604); and MRGCD's Motion to Dismiss Plaintiffs' Third Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(1) for Lack of Subject Matter Jurisdiction, filed June 24, 2004 (Doc. No. 616).

[5] The Motions to Vacate are:  City of Albuquerque's Motion and Brief in Support of *Vacatur* of April 19, 2002 Memorandum Opinion and Order, filed April 15, 2004 (Doc. No. 587); State of New Mexico's Cross-Motion for (Dismissal and) Vacatur of Prior Orders, filed March 22, 2004 (Doc. No. 580); Federal Defendants' Motion to Vacate, filed April 9, 2004 (Doc. No. 583); and MRGCD's Motion to Vacate the April 19, 2002 Memorandum Opinion and Order and September 23, 2003 Order and Partial Final Judgment, filed April 14, 2004 (Doc. No. 584).

("MRGP") and under the San Juan-Chama Project (SJCP"), and that BOR had failed to consult fully with the United States Fish and Wildlife Service ("FWS") regarding the full scope of BOR's discretion to address the crisis facing the endangered Rio Grande silvery minnow.  On the other hand, the Court found that the Army Corps of Engineers ("Corps") did not, under applicable law, have sufficient discretion in its water operations to bring its actions within the ambit of the consultation requirements of the ESA.  Defendants-Intervenors City of Albuquerque, Middle Rio Grande Conservancy District ("MRGCD"), State of New Mexico, and Rio Chama Acequia Association, and the Federal Defendants appealed.  The Tenth Circuit Court of Appeals dismissed the appeals of the Intervenors for lack of standing, and dismissed the appeal of the Federal Defendants for lack of interlocutory appellate jurisdiction.  Rio Grande Silvery Minnow v. Keys, 46 Fed. Appx. 929, 2002 WL 31027874 (10th Cir. Sept. 11, 2002) (unpublished).

     The June 29, 2001 BO, which the Court had upheld, was superseded by a September 12, 2002 BO.  On September 23, 2002, after further proceedings, this Court ruled in favor of Plaintiffs' challenge to the new 2002 BO.  Rio Grande Silvery Minnow v. Keys, 356 F. Supp. 2d 1222 (D.N.M. 2002).  The September 12, 2002 BO resulted from reinitiation of consultation between BOR and FWS under Section 7 of the ESA in response to a worsening drought.  The Court concluded that the 2002 BO was arbitrary and capricious, finding that BOR did not adequately consult on water sources that the Court had previously held were available to help protect the silvery minnow, and that the BO improperly stated that there was no reasonable and prudent alternative ("RPA") to avoid jeopardy to the species.  In an Order and Partial Final Judgment filed September 23, 2002, the Court ordered BOR to use its legal authority under the MRGP and the SJCP, as determined in the Court's previous ruling of April 19, 2002, to reduce

contract water deliveries, if necessary, to meet flow requirements for the protection of the silvery minnow during 2003.[6]  Defendants-Intervenors State of New Mexico, MRGCD, City of Albuquerque, and Rio Chama Acequia Association, and the Federal Defendants appealed the Court's September 23, 2002 findings and conclusions and injunctive orders to the Court of Appeals for the Tenth Circuit.

On March 16, 2003, while the appeals were pending, FWS issued a new BO in compliance with the Court's rulings.  Among other things, the 2003 BO contains two alternative proposals that were developed to anticipate the decision of the Court of Appeals on discretion, one proposal limiting BOR's discretion, and the other expanding it.  2003 BO § I at 5.

On June 12, 2003 the Tenth Circuit affirmed this Court's ruling regarding BOR's discretion in a 2-1 opinion.  Rio Grande Silvery Minnow v. Keys, 333 F.3d 1109 (2003).  Several parties petitioned for rehearing by the *en banc* appellate court.  On January 5, 2004, while the petitions for rehearing were pending, the Tenth Circuit dismissed the appeal as moot and vacated its June 12, 2003 opinion.  Rio Grande Silvery Minnow v. Keys, 355 F.3d 1215 (10th Cir. 2004).

In the meantime, the Tenth Circuit's June 12, 2003 panel decision had instigated a legislative response.  In December 2003, Congress enacted the first so-called "minnow rider." Energy and Water Development Appropriations Act, 2004, Pub. L. No. 108-137 § 208, 117 Stat. 1827 (Dec. 1, 2003).  The 2003 minnow rider removed BOR's discretion to use SJCP water to meet ESA requirements by prohibiting use of agency funds for that purpose, and provided a legislative declaration of adequacy of the 2003 BO for a period of two years, as long as the federal agencies complied with the RPA and the incidental take statement ("ITS") provisions of

---

[6] The Court's September 23, 2002 injunctive order did not extend beyond the end of 2003.

the 2003 BO. A second minnow rider was enacted in December 2004. Energy and Water Development Appropriations Act, 2005, Pub. L. No. 108-447 § 205, 118 Stat. 2809 (Dec. 8, 2004). The 2004 minnow rider made permanent the removal of BOR's discretion regarding SJCP water and the prohibition against use of agency funds for minnow purposes, and extended to March 16, 2013 the conditional legislative protection for the 2003 BO.

In this Memorandum Opinion, the Court first addresses the motions to dismiss based on mootness and decides that only the issues involving the SJCP are moot, whereas those related to the MRGP are not moot. The Court then proceeds to approve the stipulation and joint motion for partial dismissal, except insofar as it seeks vacatur of the SJCP portions of the prior decisions. Finally the Court concludes that, even if the entire case were moot, the Court's prior decisions should not be vacated.

## II. Motions To Dismiss - Mootness.

The movants bring their motions for dismissal under Rule 12(b)(1), asserting the case is moot because there is no remaining justiciable case or controversy. The Tenth Circuit dismissed the appeal from this Court's September 2003 rulings as moot because the injunction issued by this Court was no longer in effect after the end of 2003. Rio Grande Silvery Minnow, 355 F.3d at 1220-21. Further, the Tenth Circuit noted that, although the legal issue of BOR's discretion may arise again, it was not clear that the issue would "evade judicial review." Id. at 1220. The Tenth Circuit recognized that the mootness of the appeal did not mandate a conclusion that the entire underlying case was moot; rather, it stated that if this Court's "conclusion that the Bureau of Reclamation has discretion under the contracts is embodied in a final order, that analysis will once again be subject to review, and sufficient time for the appellate process to run will be available."

Id. at 1220. "The district court must be allowed to enter a judgment it determines appropriate." Id. at 1222.

"[T]he case and controversy must be extant at all stages of review, not merely at the time the complaint is filed." Schutz v. Thorne, 415 F.3d 1128, 1138 (10th Cir. 2005) (internal quotations omitted). Defendants have a "heavy burden" of demonstrating mootness. County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). "A case will be rendered moot if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." State of Wyoming v. United States Dep't of Agriculture, 414 F.3d 1207, 1211 (10th Cir. 2005) (*quoting* City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)) (internal quotations omitted). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." State of Wyoming, 414 F.3d at 1212, *quoting* Citizens for Responsible Gov't State PAC v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000).

When a defendant has voluntarily ceased challenged conduct, in order to prove mootness the defendant has the burden to establish both (1) that it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur, and (2) that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. County of Los Angeles v. Davis, 440 U.S. at 631; United States v. W.T. Grant Co., 345 U.S. 629, 632-34 (1953); *see also* Friends of the Earth v. Laidlaw Environmental Servs, 528 U.S. 167, 189 (2000); Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 66-67 (1987); United States v. Concentrated Phosphate Export Ass'n, Inc., 393 U.S. 199, 203 (1968); City of Albuquerque v. Browner, 97 F.3d 415, 420-21 (10th Cir. 1966). The voluntary cessation doctrine prevents a defendant from "return[ing] to his old ways." W.T. Grant Co., 345 U.S. at

632.  "[T]he court's power to grant injunctive relief survives the discontinuance of the illegal conduct."  Id. at 633.  The doctrine avoids a mootness conclusion when there is "a public interest in having the legality of the practices settled."  Id. at 632.

The Third Amended Complaint contains three prospective claims under the ESA:  the § 7(a)(2) claim for failure to fully consult and failure to avoid jeopardy to the species (Count I); the § 7(a)(1) claim for failure to conserve the species (Count II); and the § 9 take claim (Count IV).  The issue of federal agency discretion underlies each of these claims.  Defendants argue that all the claims have been mooted by intervening circumstances, i.e., issuance of the BO on March 17, 2003, and passage of the minnow rider legislation.  They also assert that the chances of non-compliance with the 2003 BO are low.[7]

The core issue in this litigation has always been the scope of federal agency discretion over water operations in the middle Rio Grande.  Absent repeal or invalidation, the 2004 minnow rider permanently removes BOR's discretion to reduce water deliveries under the SJCP, and Plaintiffs have agreed not to challenge the minnow rider as part of their settlement with the City of Albuquerque.  Thus, the issue of BOR's discretion as it relates to the SJCP is moot.

The same is not true, however, for water operations related to the MRGP.  Applying the maxim *"expressio unius est exclusio alterius,"* I interpret the clear expressions by Congress regarding SJCP water contrasted with total silence about MRGP water, in both the 2003 minnow rider and the 2004 minnow rider, to mean that Congress deliberately left the issue of discretion over MRGP water for decision by the federal agencies and the courts.  Nothing in the minnow

---

[7] MRGCD attached several exhibits to a Notice of Submission of Supplemental Authority filed on August 26, 2005 (Doc. No. 672), in a late attempt to show there is no reasonable expectation MRGCD would breach the 2003 BO.  These additional exhibits do not establish either factor under the voluntary cessation doctrine.

riders' legislative history indicates otherwise.  Therefore, the scope of BOR's discretionary authority to direct water operations (including storage, release, and diversions) involving MRGP water, so as to aid the endangered silvery minnow in accordance with the mandates of the ESA, remains a live and justiciable issue for agency and/or judicial interpretation.  Further, this Court's July 25, 2005 decision denying the cross-claims filed by MRGCD and upholding the United States' ownership of the properties and works of the MRGP (Doc. Nos. 665, 666), confirms and underscores the ongoing nature of BOR's ESA obligations in the region.  Thus, reiterating this Court's determination of the discretion issue "will have some effect in the real world."  State of Wyoming, 414 F.3d at 1212.

Federal Defendants' adoption of the March 2003 BO constitutes voluntary cessation of their previous refusal to consider the full scope of their discretion, and the 2004 minnow rider conditionally protects the validity of that BO for 10 years.  The minnow riders are attributable to Intevenors and Defendants as they were sought and/or supported by them, not by Plaintiffs.  The Court is convinced that Federal Defendants, in connection with the March 2003 BO, broadened the scope of consultation to cover the full range of their discretion to comply with this Court's September 23, 2002 injunctive order.  Previously, they had failed to consult fully in regard to the September 2002 BO despite the Court's April 29, 2002 ruling on discretion.  *See also* Rio Grande Silvery Minnow, 355 F.3d at 1221 (stating that adoption of 2003 BO was consequence of remedies ordered by district court).

Movants have failed to establish that it is absolutely clear that they would not return to their wrongful use of an impermissibly narrow and limited scope of discretion in future ESA consultations.  The 2004 minnow rider is conditional:  it protects the 2003 BO only if the federal

agencies comply with the ITS and RPA, and only to the extent that the 2003 BO is not amended. It is virtually a certainty that there will be more ESA consultations in the near future over water operations in the middle Rio Grande. There have been three consultations resulting in the BOs of 2001, 2002 and 2003. All the considerations that affect water operation decisions on minnow survival such as climate, water availability, the understanding of minnow biology, and so forth, are subject to change, meaning the issue of the scope of discretion is likely to recur. In fact, the 2003 BO recently was amended, under an expedited procedure that began on August 4, 2005 with BOR's request for reinitiation of consultation. That resulted in FWS issuing an amended ITS on August 15, 2005. The amended ITS anticipates the need to change the 2003 BO further by revising and/or modifying the estimates and values, as well as the new formula, which may result in "further consultation." Am. ITS at 3, 4, 5, Fed. Def. Ex. A to 8/16/05 hearing.

At the August 16, 2005 hearing, counsel for the Federal Defendants indicated that the federal agencies have been using the full discretion option contained in the 2003 BO. However, they have never acknowledged that their prior limited use of discretion in their consultations violated the ESA, nor have they guaranteed that they will not limit their discretion in future consultations, nor have they repudiated the use of limited discretion. The inclusion of a limited discretion option in the 2003 BO as an alternative also signals the Federal Defendants' willingness to return to their old ways, as does their eagerness to have this Court's rulings on the scope of discretion vacated. There is no evidence at all that, in the absence of court orders mandating use of BOR's full scope of discretion in their water operations in the middle Rio Grande under the MRGP, in future ESA consultations they would consider the full range of agency discretion.

Additionally, even though an unusually wet spring in 2005 resulted in a dramatic increase

9

in minnow spawning, it may never be known how the agencies' dogged refusal to consider using project water in past years to prevent unnecessary river drying has affected the downward spiral of the silvery minnow. The 2004 minnow rider was not designed to ameliorate, and it does not eliminate, the negative effects on the minnow of the Federal Defendants' narrow view of their discretion in the middle Rio Grande. The recent efforts at long-range solutions, including the 10-year BO, the settlement between Plaintiffs and the City of Albuquerque, and the cooperative efforts of other entities (including members of the collaborative working group) are commendable, positive steps in the right direction, but they do not ensure the survival of the species. Therefore, movants have failed to establish that the effects of the ESA violation have been completely and irrevocably eradicated.

Turning to the public interest factor, W.T. Grant Co., 345 U.S. at 633, the Court finds that the issue of federal discretion to reduce contract deliveries of MRGP water in order to comply with the ESA has the potential to affect day-to-day operations in the middle Rio Grande valley, and will continue to be a major factor in future formal consultations. During the course of the proceedings in this case, virtually all the parties, as well as this Court and the Tenth Circuit Court of Appeals, have recognized that it is beneficial for everyone involved in water operations in the middle Rio Grande to have the discretion issue be a settled matter. Conversely, to undo the present certainty over the discretion issue would create unnecessary problems and ambiguities. As long as there is federal agency action related to the MRGP, there will be a need to know the scope of BOR's discretion. Final resolution of the legal issue about BOR's discretionary authority over the MRGP, through entry of final judgment in this litigation, will greatly serve the public interest.

In summary, the non-SJCP issues in the case will not be dismissed as moot; the claims involving SJCP water will be dismissed as moot; and the Court will enter an order and final judgment incorporating its prior non-SJCP rulings, thereby affording the parties another opportunity to appeal the important discretion issue as it relates to the MRGP.

**III. Plaintiffs' and City of Albuquerque's Stipulation and Joint Motion for (Partial) Dismissal of Claims Regarding the San Juan-Chama Project.**

Plaintiffs and the City of Albuquerque request the Court to order dismissal with prejudice under Fed. R. Civ. P. 41(a) of claims relating to SJCP water. They also request dismissal of unadjudicated claims without prejudice. These parties, and the Albuquerque-Bernalillo County Water Utility Authority, successor in interest to the City as to San Juan-Chama water ("the Authority"), entered into a Settlement Agreement, dated April 20, 2005, that resolves disputes between Plaintiffs and the City with respect to the use of SJCP water for endangered species. In the Settlement Agreement, Plaintiffs agree not to bring future ESA claims over SJCP water, not to challenge the 2004 minnow rider judicially or in any other way, and to seek dismissal of all claims against the City. The City agrees to provide 30,000 acre-feet of storage space in Abiquiu Reservoir as a permanent "environmental pool" for the storage of native and/or SJCP "conservation water" to be acquired by Plaintiffs or others through lease, purchase or donation. In addition, the City agrees to provide money for leasing water to increase flows in the Rio Grande. The City's commitments are intended to benefit federally listed species. The Settlement Agreement also provides that the parties will request that the Court vacate those parts of the Court's April 19, 2002 and September 23, 2002 decisions that relate to the use of SJCP water, "but that all other portions of the Opinions and orders remain unaffected by this Agreement."

11

Sett. Agrmt, Ex. A to Stip. & Jt. Mot., § III(4)(a) at 4.

Rule 41(a)(2) provides for dismissal by court order "upon such terms and conditions as the court deems proper. . .. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." The rule allows a voluntary partial dismissal, and it allows voluntary dismissal of claims with prejudice. *See* Pipeliners Local Union No. 798 v. Ellerd, 503 F.2d 1193, 1199 (10th Cir. 1974) (holding that trial court did not abuse discretion in entering order of dismissal with prejudice upon settlement involving only some parties).

The State of New Mexico objects to certain features of the joint motion. The State has no quarrel with any of the substantive terms of the Settlement Agreement, but it opposes a partial dismissal, saying the Court should dismiss the Third Amended Complaint in its entirety because the case is moot. The State also objects to dismissal of the SJCP-related claims with prejudice because it "believes the dismissal here should be without prejudice." NM Resp. ¶ 9 at 3. Finally, the State objects to the language that recognizes the continuing efficacy of the non-SJCP water portions of the Court's decisions; instead, the State contends those decisions should be vacated in their entirety.

The Court has already concluded that the discretion issue is not moot with respect to MRGP water operations. Even if a case has become moot, a court is not without power to dismiss claims in accordance with a settlement agreement. *See, e.g.*, Bancorp Mortgage Co., 513 U.S. at 21 ("Article III does not prescribe . . . paralysis;" although court may not consider merits of moot case, it "may make such disposition of the whole case as justice may require"). Further, the State has offered no explanation of why it believes the SJCP-related claims should not be dismissed with prejudice, and the Court perceives no reason to dismiss without prejudice.

12

The Court will approve the Stipulation, and will grant the Plaintiffs' and the City's joint motion for partial dismissal, in part; the Court will not grant the request for vacatur of the SJCP-related portions of the Court's prior decisions.  The Court commends the Plaintiffs, the City of Albuquerque, the Albuquerque-Bernalillo County Water Utility Authority, and their attorneys for amicably resolving their disputes following highly contentious battles in this case.  The issues regarding vacatur are discussed in the next section of this Memorandum Opinion.  The claims related to SJCP water will be dismissed with prejudice, and the remaining unadjudicated claims will be dismissed without prejudice.

**IV.  Motions To Vacate.**

Movants seek to vacate this Court's April 19, 2002 Memorandum Opinion and Order (Doc. No. 371) and September 23, 2002 Memorandum Opinion and Findings of Fact and Conclusions of Law (Doc. No. 445) and Order and Partial Final Judgment (Doc. No. 446) in their entirety.  Movants present two interrelated arguments in favor of vacatur of these prior decisions: (1) that they have not had a full opportunity to appeal the Court's decisions to finality because their appeal was dismissed by the Tenth Circuit as moot; and (2) that the underlying case is moot. They maintain that their opportunities for *en banc* review by the Tenth Circuit and to petition for *certiorari* to the Supreme Court have been thwarted by the "vagaries of circumstance," Bancorp, 513 U.S. at 25, by the passage of time, and by "happenstance," *see* United States v. Munsingwear, Inc., 340 U.S. 36, 40 (1950), rather than by their own intentional acts.

At the core of the dispute about vacatur is the issue of agency discretion over middle Rio Grande water operations, an issue central to the case from its inception.  As explained in the "Background" section above, there were three separate rulings as to federal agency discretion in

13

this Court's April 19, 2002 decision. The Court found that BOR had discretion to alter contract water deliveries under the MRGP and under the SJCP, but that the Corps lacked such discretion in operating its reservoirs. The Court concluded in the previous section on mootness in this Memorandum Opinion that the discretion issue as to the SJCP is moot because of the 2004 minnow rider, and the settlement between Plaintiffs and the City further underscores the mootness of that issue. The validity of the Court's ruling as to the lack of the Corps' discretion over water operations has never been challenged, which puts that issue in a similar category as the SJCP issues for purposes of this analysis. The Court also concluded that the discretion issue as to the MRGP is not moot. For that reason alone, vacatur of the Court's prior decisions related to that issue is not warranted, and in order to preserve that issue in context, the Court would deny vacatur of the entirety of its prior decisions. However, for purposes of this vacatur analysis, the Court will assume that the entire case, including all three discretion issues, is moot, and will proceed to consider the appropriateness of vacatur under that assumption.

Vacatur is not automatic when a case has become moot; it is an equitable remedy that must be exercised in the manner "most consonant to justice" considering "the nature and character of the conditions which have caused the case to become moot." Bancorp, 513 U.S. at 24. It is the burden of the party seeking relief from the status quo of a judgment to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." Id. at 26. "[W]hen mootness results from happenstance or the actions of the prevailing party," it is usually appropriate for the court to vacate the judgment below. State of Wyoming, 414 F.3d at 1213, *citing* Bancorp, 513 U.S. at 24-25. The equities would favor vacatur where a party seeking review of the merits of an adverse ruling was "frustrated by the vagaries of circumstance," Bancorp, 513 U.S. at 25, or

14

where mootness was based on intervening events not attributable to the nonprevailing party.

However, vacatur is not appropriate when mootness results from a "voluntary act of a nonprevailing party," State of Wyoming, 414 F.3d at 1213, *citing* Bancorp, 513 U.S. at 24-25; *see also* In re Western Pac. Airlines, Inc., 181 F.3d 1191, 1197-98 (10th Cir.1999) (denying vacatur where movant voluntarily contributed to mootness); Jones v. Temmer, 57 F.3d 921, 923 (10th Cir. 1995) (granting vacatur where mootness not attributable to movant). The concern is that such voluntary acts may be motivated by or result in manipulation of the judicial process. *See* Rio Grande Silvery Minnow v. Keys, 355 F.3d at 1220; McClendon v. City of Albuquerque, 100 F.3d 863, 868 (10th Cir. 1996); State of Wyoming, 414 F.3d at 1213, n. 6. A manipulative purpose would include "a desire to avoid or undermine the district court's ruling." State of Wyoming, 414 F.3d at 1213, n. 6. If that concern is not present, vacatur is sometimes granted where a voluntary act may be characterized as commendable or responsible governmental action. *See* McClendon, 100 F.3d at 868 (granting vacatur where compliance with settlement agreement "constitutes responsible governmental conduct to be commended" and voluntary action did not result in manipulation of judicial process); American Library Ass'n v. Barr, 956 F.2d 1178 (D.C. Cir. 1992) (characterizing congressional legislative action that mooted case as "responsible lawmaking").

Another equitable factor that must be considered is "the public interest." Bancorp, 513 U.S. at 26.

> Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.

15

Id. Calling vacatur "a refined form of collateral attack on the judgment" when sought by "a party who steps off the statutory path" by settling a case, the Supreme Court in Bancorp expressed concern for "the orderly operation of the federal judicial system." Id. at 27. The Supreme Court rejected the notion that there is inherently more value in the relitigation of issues disposed of in judgments that have become moot than in the "benefits that flow to litigants and the public from the resolution of legal questions." Id. at 27.

In Rio Grande Silvery Minnow v. Keys, 355 F.3d 1215 (10th Cir. 2004), the Tenth Circuit vacated its prior opinion because the appeal had become moot.[8] In doing so, the Tenth Circuit considered several factors. First, the appeal was from a preliminary injunction, all provisions of which had "either been met or were never invoked." Rio Grande Silvery Minnow, 355 F.3d at 1219. Because of "favorable climatic conditions," id. at 1221, BOR had not had to comply with this Court's injunctive order by reducing delivery of water to any contract user, id. at 1219, and the preliminary injunction expired before the appeal was finalized. Thus, the mootness of the appeal was caused by a combination of climatic conditions and the passage of time, neither of which was attributable to a party. The appellate court also considered the passage of the minnow rider, but opined that "the subsequent acts of Congress were merely incidental to the issue of mootness." Id. The court mentioned, but did not discuss fully, the adoption of the new BO in 2003, stating only that the BO was in part "the consequence of remedies ordered by the district court." Id. Finally, the court considered the "public interest" factor, and found that perpetuation

---

[8] The Tenth Circuit declined to vacate this Court's September 2002 injunctive order. It left that decision for this Court "because the complaint has not been dismissed and because the injunction was temporally limited and preliminary . . .." 355 F.3d at 1222. The Tenth Circuit did not discuss vacation of this Court's April 19, 2002 discretion determination.

of the appellate panel opinion "does not affect the public." Id. at 1222.

Movants have failed to demonstrate their entitlement to the extraordinary remedy of vacatur of this Court's prior decisions. This case in this Court is in a different posture than was the appeal before the Tenth Circuit. The mootness of the discretion rulings in this Court's April 19, 2002 decision resulted in part from voluntary action by FWS, a federal agency, i.e., adoption of the 2003 BO, and in part from legislative action in the form of the minnow riders. The circumstances here cannot fairly be described as happenstance. Adoption of the 2003 BO was commendable governmental conduct in that the 2003 BO complies with this Court's discretion ruling, but not entirely so because it contains a hedge. Rather than embracing and adopting the Court's view of BOR's discretion, the FWS crafted the 2003 BO to contain two options, a limited option that assumes the discretion ruling will be overturned on appeal; the other a full discretion option that assumes the ruling will be affirmed. Further, legislative action negating agency discretion under the SJCP and conditionally protecting the 2003 BO was taken with remarkable alacrity. Intervenors and Defendants precipitated the passage of the minnow riders in the political process, in that they planned, sought, and/or supported the riders' passage. The losing parties took their cause to the halls of Congress, as was and continues to be their right, but they cannot now complain that their appeal rights in the court system have been curtailed through no action on their parts.

Additionally, the Court finds that enactment of the minnow riders was accompanied by a desire of the Defendants and Intervenors in this case to avoid or undermine this Court's ruling on agency discretion under the ESA. Unlike the governmental remedial measures in McClendon that did not result in manipulation of the judicial process, 100 F.3d at 868, the minnow riders in this

17

case were designed specifically to manipulate the judicial process by changing the law as this Court and the Court of Appeals interpreted it in relation to SJCP waters.  *See, e.g.*, 149 Cong. Rec. S10259-60 (daily ed. Jul. 30, 2003), and S10896-97 (Aug. 1, 2003) (statements of Sen. Bingaman) (rider responds to and redresses "erroneous" SJCP portion of court decision on BOR discretion to reallocate water for ESA purposes, and protects BO legislatively).  This is not meant to imply that the Defendants' and Intervenors' actions were sinister or improper; they were not.  However, a more direct intent to manipulate the judicial process would be hard to fathom.

     Moreover, the parties have expended substantial monies and attorneys' time and effort in litigating this case over several years, and this Court has devoted enormous judicial resources in managing the case and in reaching its judicial decisions.  This Court engaged in a lengthy and principled analysis of the discretion issue in its April 19, 2002 decision.  That issue had been festering for years within the federal agencies in New Mexico charged with enforcing ESA protections for the minnow.  The scope of federal agency discretion in operating the MRGP is of vital importance for determining how best to manage the project consistent with the ESA, for the economy of the region, and for the survival of the endangered silvery minnow in its last remaining natural habitat.  Because Congress chose not to alter this Court's discretion ruling as it applies to MRGP water when Congress changed the law with respect to SJCP waters, the ruling has significant consequences regarding how the Federal Defendants are to conduct future consultations with respect to the MRGP.  If the issue arises again in litigation in connection with this or other endangered species in the middle Rio Grande system or elsewhere, this Court's factual and legal analysis may provide a baseline to inform the debate, even though this Court's decisions are not binding precedent for other courts.  In considering the public interest factor, the

1

Court must weigh the effects of its prior decisions on all parties and the public, not only on the nonprevailing parties.[9]  The benefit of keeping the prior decisions intact weighs heavily because doing so prevents the uncertainty that prevailed in the past.

Having closely scrutinized the extensive administrative record, the case law, and the arguments of counsel for the numerous parties in making its factual and legal analysis of the issues, this Court believes it is more worthwhile and consonant with justice to retain, rather than to vacate, the prior decisions in their entirety.

An Order and Final Judgment will be entered contemporaneously with this Memorandum Opinion.

_James A. Parker_
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] An additional reason for denying the vacatur motions is to make clear to the public that nothing improper motivated the discretion decision.  On September 22, 2002, shortly after the Court announced its second ruling on discretion, the *Albuquerque Journal* published a one-half page statement signed by City of Albuquerque Mayor Martin J. Chavez entitled, in large print, "Someone's Stealing Our Water!"  This could easily be interpreted by the public as an accusation that criminal intent underlay the ruling, and granting the vacatur motions may be construed by some as validation of that position.  Accusing a judge of committing the crime of theft in making a judicial ruling is, of course, a very serious matter.  Recently, the *Albuquerque Journal* quoted New Mexico's Governor Bill Richardson as stating that judges' actions "must be above reproach" and this Court fully supports that view.  The citizens of the State of New Mexico should be confident in their belief that judges, in making their rulings, are not engaging in unlawful activity.  On the other hand, the state's citizenry should be entitled to know if an elected official has, for purely demagogic purposes, falsely accused a judge.  Anyone, including the mayor or the editors of the *Albuquerque Journal*, which published the mayor's accusation, who has any evidence that the judicial decisions rendered in this case by this Court or by the judges of the Court of Appeals for the Tenth Circuit were other than principled judicial interpretations of the law on difficult issues, may file a complaint of judicial misconduct under the procedures established by Congress.  28 U.S.C. §§ 351-364.